# CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

OCTOBER TERM, 1876.

---

THE CO-OPERATIVE LIFE ASSOCIATION OF MISSISSIPPI *v.*
JOHN D. LEFLORE ET ALS.

1. INSURANCE. *Misrepresentation by applicant. General rule.*
   A contract of insurance, like other contracts, is avoided by an untrue
   statement by either party as to a matter vital to the agreement,
   though there be no intentional fraud in the misrepresentation.

2. LIFE INSURANCE. *False statements in application. Materiality. Agreement that they avoid the policy.*
   The agreement of the parties that the statements in an application for
   insurance are absolutely true, and that their falsity in any respect
   shall avoid the policy, removes the question of their materiality
   from the consideration of the court or jury.

3. SAME. *Case in judgment. Construction of the contract.*
   A proposal for life insurance contained a number of answers by the
   applicant to questions therein, with a formal declaration that in
   the proposal she had not withheld any material circumstance or
   information touching her health or habits, and agreed that the
   declaration and proposal should be the basis of the contract, and
   if any fraudulent or untrue allegation was contained in either, the
   policy should be void; and the policy, purporting on its face to be
   issued in consideration of the representations in the application,
   contained in its body, as part thereof, an agreement, reciting that,
   if any fraud be committed against the company in the statements
   made in the application, and on the faith of which this policy is
   issued, then the policy shall be null and void. *Held,* that if the

answers made by her in the proposal were untrue, the company was not liable on the policy, even though there was no actual fraud on her part.

4. SAME.   *Stipulations in policy.   Warranties.*

All stipulations and conditions contained in the body of an insurance policy are warranties, to the absolute truth of which the parties have pledged themselves, and any deviation from which will defeat a recovery ; and they are not mere representations or statements which will or will not have that effect, accordingly as the court and jury may regard them as material to the contract.

5. SAME.   *Statements contained in another paper, referred to in policy so as to make it part thereof.*

By the weight of authority the same effect will follow, if the statements, instead of being embodied in the policy, are contained in another paper, signed by the party, which is so referred to in the policy as to be made a part thereof.

6. SAME.   *What kind of reference in policy necessary to make another paper part thereof.*

Not every reference in a policy will make the paper referred to a part of it, but those only which so declare, or which are plainly intended to be the basis of the contract, and upon the faith of which it is expressly stipulated that the policy is issued.

7. WARRANTY.   *By what words created.*

No particular words are essential to create a warranty.

8. EVIDENCE.   *Competency.   Record to prove fact of suit.   Allegations of unsworn pleadings not admissions.*

The record of a suit at law in the Circuit Court is competent evidence to prove the fact of the institution of the suit; but the unsworn pleadings therein cannot be introduced against a party to the suit, as admissions of the facts therein stated.   And if the record be introduced for the former purpose, it is proper for the court to instruct the jury that the language of the pleadings is that of the lawyers, and not of the parties to the suit.

9. EVIDENCE.   *Relevancy.   Action on life policy.   Issue of fraud in application.*

In an action on a policy of life insurance, where the issue is whether the applicant was guilty of a fraud on the underwriters in stating, in her application, that " she had never met with any accidental or serious personal injury," after proving that she sustained some injury in a railroad accident, the record of a suit for damages by her against the railroad company, based on said accident, and instituted four months after the insurance was effected, is admissible evidence, as tending to show whether she omitted to speak of the accident because she deemed it insignificant, or because she desired to conceal a knowledge of it from the insurance company.

10. INSURANCE.  *Defence of misrepresentation to suit on life policy.  Question to medical examiner.  Quære.*

In a suit on a policy of insurance, where the defence is misrepresentation in the answers to the questions in the application for insurance, *quære*, whether it is proper to ask the medical examiner of the company, who approved the application of the insured, "whether, if he had been advised of such facts, he would have given said approval;" or, "whether his company would have accepted the risk." Authorities cited *pro* and *con.*

11. SAME.  *Rebuttal of allegation of false statement.  Proof of what was said when answer written down.  Quære.*

In a like case, *quære* as to the effect of proof that in point of fact the applicant did truly inform the agent and the medical examiner of the company, at the time of her application, in relation to the matters as to which she is charged with misrepresentations, and that they considered them of no consequence, and themselves wrote the answers, which she afterwards read over and signed.

ERROR to the Circuit Court of Montgomery County.

Hon. O. DAVIS, Judge.

At the November Term, 1873, of the Circuit Court of Montgomery County, John D. Leflore, for himself and as guardian for his minor children, instituted an action of assumpsit, upon a policy of insurance, which had been issued by the plaintiffs in error on 8th April, 1872, upon the life of Mrs. Fannie S. Leflore, wife of J. D. Leflore, and the mother of the minors, who were joint beneficiaries therein.

The defendants pleaded the general issue, and gave notice of the special matters they would offer in evidence, to wit:—

1. The original application, required by the company, and made by Mrs. Leflore, when proposing to effect the insurance on her life, as the basis of the contract sued on, and referred to therein.

2. Evidence that fraud was committed against the defendants, in some of the statements made in said application, and especially in one or more of the several answers given to the following questions in said application; viz., No. 9, No. 10, No. 11, No. 12, and No. 13.

3. Evidence that the aforesaid answers, or some one of them, whether known to the applicant to be untrue or not, were then in fact untrue, and were material to the contract, and the same is void.

4. Evidence that said several answers were untrue, or some one of them was untrue, at the time they were made, and thereby there was a breach of warranty made by said Fannie S. Leflore, and the contract is thereby made void.

The plaintiffs introduced in evidence the policy sued on, which was issued 8th April, 1872, and contained the following clauses in the body of the policy, as part and parcel thereof, to wit : —

" The Co-operative Life Association of Mississippi, in considera- tion of the representations made to them in the application for this policy, and of the sum of $25, . . . do insure the life of said Fannie Sharkey Leflore . . . in the amount of $2 for each member- ship in Class A, $3 for each membership in Class B, and $4 for each membership in Class C, that may be in force at the time of her death. And in case there should not be enough memberships in force, to make the mortuary fees amount to $1,000, . . . the asso- ciation agree to make good the deficiency. . . . And the said association hereby promise and agree to pay the amount of insurance to John D. Leflore, husband of insured, and her children, within sixty days after proof of death of the insured. *Provided always*, and this policy is issued and accepted by the insured upon the following express conditions and agreements, that is to say : —

" 1.    .    .    .    .    .    .    .    .    .    .

" 2. If, however, any fraud should be committed against said association, in the statements made in the application by the insured, and upon the faith of which this policy is issued, then and in such case this policy shall be null and void, and all payments made thereon shall become forfeited to the association.

(Then followed other clauses not material to this case.)

" *In witness whereof*, the president of the Co-operative Life As- sociation of Mississippi has hereunto subscribed his name, attested by the secretary," &c.

The plaintiffs next proved the payment of all premiums, mortuary fees, and annual dues which had been due or demand- able upon said policy ; the death of Mrs. Leflore in New Orleans on 21st March, 1873 ; the proof of death, filed in office of company ; that the amount due on said policy was $1,000 ; and rested their case.

The defendants then introduced J. M. Watt, who testified

that he was agent of the company, and took Mrs. Leflore's application on 4th April, 1872.  He identified the application, when produced, which contained the following clauses, statements, questions and answers, embodied therein, as part and and parcel thereof, as follows : —

" *Application to the Co-operative Life Association of Mississippi.*

"Home Office, Winona.

" Particulars required from persons proposing to effect insurance on lives in this company, and forming the basis of the contract.

" 1. Name in full of party whose life is proposed to be insured. — Mrs. Fanny Sharkey Leflore.

(Then followed seven other questions not material to this case.)

" 9. Is the party subject or predisposed to Dyspepsia, Dysentery, Diarrhœa, or any other disease or bodily infirmity ? — No.

" 10. Has the party had, or been afflicted since childhood with, any of the following complaints ?  Answer opposite each query.

| | | | |
|---|---|---|---|
| Disease of Lungs, or Pulmonary Complaint ? | No. | Cancer ? | No. |
| | | Bronchitis ? | No. |
| Spitting or raising of blood ? | No. | Eruptions, or Disease of Skin ? | No. |
| Dropsy ? | No. | Bilious Colic ? | No. |
| Scrofula ? | No. | Paralysis ? | No. |
| Fistula ? | No. | Apoplexy ? | No. |
| Rupture ? | No. | Spinal Disease ? | No. |
| Fits or Convulsions ? | No. | Palpitation, or Disease of Heart ? | No. |
| Insanity ? | No. | Disease of Liver, Kidneys, or | |
| Rheumatism ? | No. | Brain ? | No. |
| Gout ? | No. | Or any serious disease ? | No. |

" 11. Has the party ever met with any accidental or serious personal injury ? — No.

" 12. Has the party ever been seriously ill ?  If so, when, of what complaint, and who was the medical attendant ?  State his name and residence. — No.

" 13. Is the said party now in good health ? — Yes.

" 14. Has any near relative of said party died or been afflicted with Consumption, Scrofula, Insanity, Gout, or any pulmonary complaint or hereditary disease?  State particulars. — One sister died of consumption."

(Then followed certain other questions not material to this case.)

" 25. Is the party aware that any untrue or fraudulent answers to the above queries, or any suppression of the facts in regard to the

party's health, will vitiate the policy, and forfeit all payment made thereon ? — Yes."

"*I do hereby declare*, that in the above proposal I have not withheld any material circumstance or information touching the past or present state of health or habits of life of myself, with which the officers and directors of the Co-operative Life Association of Mississippi should be made acquainted.

"*And I do hereby agree*, that this declaration and the above proposal shall be the basis of the contract between myself and said company; and that if any fraudulent or untrue allegation be contained therein, or in the proposal, or I should neglect or fail to pay the amount of contingent fee, or the assessments that may be required of me from time to time to meet losses from death, then all moneys which shall have been paid on account of such insurance shall be forfeited to said company, and the policy void.

"Dated at Carrolton, Miss., this fourth day of April, 1872.

"(Signed)          FANNIE S. LEFLORE.

"Witness, J. M. WATT, *Agent*."

Indorsed on the foregoing application was the medical examiner's report, recommending the acceptance of the proposal, signed, "G. W. Vasser, M.D., Medical Adviser."

The witness further stated that Dr. Vasser made the examination, and wrote the answers, except the first two or three, which the witness wrote; that John D. Leflore and he were present at first, but left the room during the examination.

The defendants then proved by several witnesses that Mrs. Leflore was, before the application, laboring under a disease known as "Bright's disease" of the kidneys; that she had been long afflicted with disease of the kidneys or liver, or both; that she had been previously afflicted with paralysis, and also with an internal tumor ; that she had been seriously ill with puerperal convulsions and neuralgia, which greatly endangered her life, and for which she was attended by Dr. Choppin, in the city of New Orleans, as her physician; and that she had met with a serious personal injury by accident, on the 18th of October, 1871, while on the cars of the Mississippi Central Railroad ; and that at the time the application

was made she was afflicted with some renal disease, which greatly endangered her life.

The defendants introduced Dr. B. F. Ward, who testified that he was a regular practising physician, and one of the medical board of the defendants, to whom were submitted all applications for insurance, to be passed upon for their recommendation or disapproval. The defendants' counsel asked the witness, " whether, if the application had disclosed the whole trouble and illness of Mrs. Leflore in New Orleans, and the paralysis and tumor, as proved on the trial, he, as medical examiner of the board, would have recommended her for insurance, or whether she would have been received by the company." To this question the plaintiffs objected, because it was incompetent to be proved by the witness, — it not being addressed to him as an expert in medical science, but as one of the examiners of the defendants, and an agent of theirs, — and it being purely a question of law for the court as to the materiality of facts not disclosed, and of fact for the jury as to intentional concealment of facts by the applicant. The objection was sustained by the court ; and the defendants excepted.

The defendants offered to read in evidence the certified copy of the record of the suit of Mrs. Fannie S. Leflore against the railroad company, instituted by her on 22d August, 1872, for the injuries sustained by her in the accident on 18th October, 1871, to prove that Mrs. Leflore regarded said injuries as serious in their nature, and sufficiently so to justify a demand for a large pecuniary compensation ; and that, being so regarded by her, it should have been communicated by her in the application for insurance, in response to question No. 11. To the reading of this record the plaintiffs' counsel objected, because it was the mere pleadings of a party in a suit at law, and was inadmissible. The objection was sustained by the court ; and the defendants excepted.

In rebuttal, the plaintiffs introduced Dr. G. W. Vasser and John D. Leflore, whose testimony tended to show that Mrs. Leflore, in point of fact, had disclosed all the facts about the railroad accident, her illness in New Orleans, the tumor, and paralysis ; but the answers to the questions were written down by Dr. Vasser in brief form, to express not what she said (for

her answers were very minute and prolix), but the general result of all she said, and they not regarding those facts as material, Mr. Watt and Dr. Vasser omitted them in the application.

The court instructed the jury for the plaintiffs : —

1st, " Nothing short of fraud committed by Mrs. Fannie S. Leflore against the defendants in her application will avoid the payment of the money on the policy."

2d, " Fraud is never to be presumed, but always to be proved."

3d, " If the jury find from the evidence that the applicant, Mrs. Leflore, made to the agent or agents of the defendants full disclosures concerning all matters of her health, in so far as she had knowledge of the same, and did not designedly or intentionally misstate any fact within her knowledge, then, on the issue of fraud, the jury. will find for the plaintiffs."

4th, " The application for insurance, and the inquiries contained therein, demand fair dealing on the part of the applicant, and her answers must be full, honest, and true, so far as they are within her knowledge ; but, in this case, they are not warranties, and the policy is avoided only when they are untrue within the knowledge of the applicant, or intentional concealment is practised by her."

5th, This instruction announces the same rule as the foregoing.

6th, " The accidental or serious injury referred to in question No. 11 means such injury as had the influence or tendency to affect health or shorten life. An accident, the effect of which was merely temporary, and had apparently passed away when the application was taken, was not such· as the non-disclosure of it would affect the validity of the policy."

To the giving of these instructions the defendants excepted. All of the defendants' instructions, which announced rules contrary to the foregoing, were refused, to which the defendants excepted.

The jury found a verdict for plaintiffs for $1,107.50.

Whereupon defendants moved for a new trial; and, on the

overruling of the motion, brought the case to this court, where they assign for error: —

1. The action of the lower court in granting and refusing instructions.

2. The rejection of the record of Mrs. Leflore's suit against the railroad company.

3. The refusal to let Dr. Ford answer the question propounded by the defendants' counsel.

4. Overruling the motion for a new trial, which was based on the ground that the verdict was against the evidence and law.

*James Somerville,* for the plaintiffs in error.

1. The action of the court upon the instructions originated in a misconstruction of the contract sued on. The policy and application are to be read together as constituting one entire contract. *Burritt* v. *Saratoga Mutual Ins. Co.*, 5 Hill, 188; Bliss on Life Insurance, § 57, and cases there cited; May on Insurance, § 158. The application, in this case, is a warranty. *Chanter* v. *Hopkins*, 4 M. & W. 404; *Eddy Street Foundry* v. *Hampden S. & M. F. Ins. Co.*, 1 Cliff. 300; Angell on Insurance, § 307. If the whole contract be an undertaking on the part of the insured, for the truth of the several answers, then an untrue averment will vacate the policy, and it need not be untrue within the knowledge of the insured. *Duckett* v. *Williams*, 2 C. & M. 348. If the statements in the application are construed to be representations, and not warranties, they must still be substantially true. A representation differs from a warranty only in this: in the former, the insurance is not void, unless the fact misrepresented is material; in the latter, the materiality of the fact is unimportant. *Lindeman* v. *Desborough*, 8 B. & C. 586; *Elton* v. *Larkins*, 5 C. & P. 86. It is not necessary that Mrs. Leflore should have been guilty of intentional fraud. If she, in the answers, misrepresented or concealed any material fact, the policy is void, whether she did it through some motive not in itself evil, or through ignorance of its materiality. *Vose* v. *Eagle Life & Health Ins. Co.*, 6 Cush. 18; *Campbell* v. *New England M. L. Ins. Co.*, 98 Mass. 381; *Rawls* v. *American Life Ins. Co.*, 36 Barb. 357; s. c. 27 N. Y.

282, cited in Bliss on Life Insurance, § 51; 2 Duer on Insurance, 646; *McDonald* v. *Fraser*, Doug. 260; *Dennistoun* v. *Lillie*, 3 Bligh, 202; *Carpenter* v. *American Ins. Co.*, 1 Story, C. C. 57; Angell on Insurance, § 175; Phillips on Insurance, § 643; Bliss on Life Insurance, 74.

2. The record in the case of *Mrs. Leflore* v. *The Mississippi Central R. R. Co.*, should have been admitted, after the burden of proving actual fraud was thrown on the defendants. It tended to show the intent. 1 Greenl. Evid. § 53; *Partee* v. *Sullivan*, 44 Miss. 272. It was not intended to use the unsworn pleadings in the record, against the party pleading, as admissions or declarations of the facts contained in them.

3. Dr. Ward should have been permitted to answer the question propounded by the defendants' counsel. The effect which a particular fact ought to have on the risk may be proved by an officer conversant with the business of the company. *Quinn* v. *National Association Co.*, Jones & Cary, 316; *Hartman* v. *Keystone Ins. Co.*, 21 Penn. 466.

4. The last error assigned is the action of the court in overruling the motion for a new trial. The learned counsel reviews the main features of the evidence, and concludes that the proof sustained the issues made in the pleadings for the defence.

5. When the representations are in writing, and the parties, by framing specific questions as to the history and health of the insured, settle for themselves that they are material to the contract, they are to be declared so by the court; and the beneficiary cannot show the contrary. May on Insurance, § 185; *Anderson* v. *Fitzgerald*, 4 H. L. Cas. 484; s. c. 24 Eng. L. & Eq. 1; *Kennedy* v. *Georgia Life Ins. Co.*, 12 U. S. Rev. 146.

*W. R. Barksdale*, for the defendants in error.

1. Construction of the contract. The answers of the assured to the questions in the application were mere representations, and not warranties. Bliss on Life Insurance, § 52, Throughout the policy they are styled " representations " and " statements." If the underwriters had intended that the answers should be warranties, this would have been plainly

written in the policy.   Bliss on Life Insurance, § 44.   In applications for life insurance, the rule against construing the statements as warranties is more rigid than in marine or fire insurance.   *Horn* v. *American Mutual Life Ins. Co.*, 64 Barb. 81.   No one but a medical expert can tell the symptoms of disease, and the ultimate effect of injuries or sickness.   All that is required of an applicant for life insurance is honesty and fair dealing ; and his statements are not warranties.

2. The record of the suit against the railroad company was properly rejected.   The unsworn pleadings are the language of the lawyer, not of the party.   *Crump* v. *Gerock*, 40 Miss. 765.

3. The question asked Dr. Ward was improper.   It was giving to an officer of the company the right to assume the province both of judge and jury, and decide on the materiality of the statements.   It was asking what would be the probable result, in his opinion, if a certain hypothesis were true, basing a supposition on a supposition.   The more recent cases are uniform that such a question cannot be put to an officer of the company.

4. The defendants took issue on the truth of Mrs. Leflore's statements in her application.   The testimony fails to show that these statements were materially untrue.   This essential fact is wanting.   There is no proof that her life was shortened or her death caused by any disease which she had at the time of the insurance, or the effects of any accident which had befallen her, or any sickness with which she was afflicted, prior thereto.   The verdict is right on the facts ; and, if there was any error in rejecting evidence, or giving or refusing instructions, it was not a material error.   On all the testimony the jury have decided that Mrs. Leflore was guilty of no fraud, and that none of her statements were materially untrue ; and this court cannot disturb their verdict.

5. Express condition No. 2 in the policy is, that it shall be void only where there is fraud in the statements of the insured.   This is the contract.   The statement must be material, and must have been fraudulently made.

CHALMERS, J., delivered the opinion of the court.

John D. Leflore, suing for himself and children, recovered judgment in the Circuit Court of Montgomery County against the Co-operative Life Association of Mississippi, upon a policy of insurance which had been by said corporation issued upon the life of his deceased wife. The rightfulness of the recovery depends principally upon the correctness or incorrectness of the action of the court below in giving and refusing instructions.

It having been shown that Mrs. Leflore did not answer truly certain questions propounded to and answered by her, in her application for insurance, the court below instructed the jury that the beneficiaries under the policy were, nevertheless, entitled to recover, unless they believed that the misrepresentations by the insured were fraudulently made. Thus, by the first instruction granted for the plaintiffs below, the jury were informed that "nothing short of fraud committed by Mrs. Leflore against the defendants in her application will avoid the payment of the money on the policy;" and, by subsequent instructions, fraud was defined to consist in "designedly or intentionally misstating any fact or facts within her knowledge."

In none of the instructions is it declared that a different rule will prevail, if the untrue statements were made as to matters material to the risk, and which the parties may be supposed to have had specially in view in making the contract; but the broad doctrine is laid down, that nothing short of actual moral fraud upon the part of the applicant will avoid the policy, even though there have been false representations, not fraudulent, as to the most vital and important matters. It is at once evident that these charges cannot be sustained, unless there is something exceptional in the character of the policy sued on.

Nothing is better settled, both in regard to insurance contracts and contracts of all sorts, than that an untrue statement by either party, as to a matter vital to the agreement, will avoid it, though there be no intentional fraud in the misrepresentation. Bliss on Insurance, § 52; May on Insurance, §§ 181, 182.

The particular feature which it is insisted takes the case

out of the operation of this rule, is to be found in the second special proviso annexed to, or rather printed in, the body of the policy, which is in these words : " If, however, any fraud should be committed against said association in the statements made in the application by the insured, and upon the faith of which this policy is issued, then and in such case this policy shall be null and void, and all payments made thereon shall become forfeited to the association."

Under this clause, it is argued that nothing less than actual fraud in the application will avoid the policy ; and, in consonance with this view, the charges asked for by the plaintiffs, noted above, were given, and all those offered by the defendants, announcing a different doctrine, were refused.

In testing the correctness of this ruling, it will be necessary to look carefully at the other parts of the policy, as well as at the written application for insurance, " upon the faith of which," as set forth in this proviso, the contract was entered into ; and to consider also the nature of the untrue statements shown to have been made by the applicant. The application was made out in the town of Carrolton, by the agent of the company, the applicant, and a local physician, acting as medical examiner for the association. It was by the agent forwarded to the head-quarters of the association at Winona, from which place, four days afterwards, the policy was returned.

The application contained twenty-five printed questions, to all of which the applicant made response in writing.

*Int.* 10. " Has the party had, or been afflicted since childhood with, any of the following complaints: . . . paralysis, disease of the liver or kidneys, or any serious disease ? "

*Int.* 11. " Has the party ever met with any accidental or serious personal injury ? "

*Int.* 12. " Has the party ever been seriously ill ? If so, when, of what complaint, and who was the medical attendant? State his name and residence."

To each of these interrogatories the applicant answered " No."

It was satisfactorily proven that each of these answers was untrue in fact, however honest the witness might have been

in supposing that the accidents and diseases from which she had theretofore suffered were at the time immaterial.

A few years before the date of this application she had suffered from an attack of paralysis, by which her features had been, for a short time, slightly distorted. About the same time she had been afflicted with an internal tumor, which, located in the lower part of the abdomen, was plainly perceptible to the external touch, and by which she had at one time been seriously alarmed. Two years before the date of the policy she had been dangerously ill in New Orleans, and had lain for two months under the medical treatment of Dr. Choppin, an eminent physician of that city. She was pregnant at the time; and her condition was rendered dangerous by the presence, also, of the disease known as albuminuria, which seems to be akin to diabetes, or, perhaps, to Bright's disease of the kidneys; and, in order to save her life, the physician was compelled to produce an abortion. About eight months before the taking out of the policy, she had been in a railroad accident, in consequence of the injuries received in which she had been confined to her bed for five or six days, and to recover damages for which she brought suit against the railroad company a few months after the issuance of the policy of insurance.

She died very suddenly, of apoplexy, about twelve months after the insurance was effected, in the city of New Orleans, where she had gone again to consult Dr. Choppin.

If we concede that, at the time of making her application, her health was so good that she was momentarily oblivious of all these things, or thought them of no present or future importance, it is quite evident that the insurance company did not so regard them. For reasons satisfactory to itself, it required specific information upon these matters, and thereby indicated to the applicant, that, however lightly she might regard them, it considered them as vital to the matter in hand.

An immense amount of labor and learning is displayed in the books in the consideration of what are, and what are not, material matters in contracts of insurance, a false statement in relation to which will avoid the policy; and it is impossible to

resist the conclusion, in perusing the cases, that the courts, in order to avoid supposed hardships in this class of suits, have been disposed to adopt other rules than those applicable to ordinary contracts. For this difference we can recognize no sound principle. Contracts of insurance are neither *mala prohibita* nor *mala in se*, and, where entered into by persons *sui juris*, are to be regulated and determined by the same rules that govern ordinary agreements, with neither more nor less favor than is shown in other cases. As to the question of the materiality of the statements and conditions annexed to them, we prefer the simple rule laid down by the Supreme Court of the United States, in the late cases of *Jeffries* v. *Life Ins. Co.*, 22 Wall. 37, and *Ætna Life Ins. Co.* v. *France*, 91 U. S. 510 ; namely, that the agreement of the parties, that the statements of the application are absolutely true, and that their falsity in any respect shall avoid the policy, removes the question of their materiality from the consideration of the court or jury. That this is the true rule, we entertain no question. If parties have deliberately agreed that the validity of their contract shall depend upon the truth or falsehood of certain statements, neither court nor jury can say that the matters about which the false statement is made are too trivial to work a forfeiture of its advantages.

Bearing this in view, let-us turn to the application and the policy, for the purpose of ascertaining how far their provisions show an agreement that the one should control the other, and how far the stipulations of both explain the terms of the second proviso, under which it is claimed that nothing short of actual fraud can defeat a recovery.

The application has these words at its head: " Particulars required from persons proposing to effect insurance on lives in this company, and forming the basis of the contract."

Then follow twenty-five questions. The last of these is in these words : —

" 25. Is the party aware that any untrue or fraudulent answers to the above queries, or any suppression of the facts in regard to the party's health, will vitiate the policy, and forfeit all payment made thereon ? "

To this question Mrs. Leflore answered " Yes."

It will be noted that the declaration is, that untrue answers, or fraudulent answers, or suppression of facts in regard to health, will alike vitiate the policy. Following this comes a formal declaration, in these words : —

" I do hereby declare, that in the above proposal I have not withheld any material circumstance or information touching the past or present state of health or habits of life of myself, with which the officers and directors of the Co-operative Life Association of Mississippi should be made acquainted. And I do hereby agree that this declaration and the above proposal shall be the basis of the contract between myself and said company ; and that, if any fraudulent or untrue allegation be contained therein, or in the proposal, or I should neglect or fail to pay, &c., all moneys which shall have been paid on account of such insurance shall be forfeited to said company, and the policy be void."

Turning now to the policy itself, we discover that it commences as follows : " In consideration of the representations made to them in the application for this policy, and of the sum of twenty-five dollars," &c. Then follows the usual language of such instruments ; and embraced in the body of this policy (not annexed to it in the shape of separate conditions, as is commonly done) comes the proviso, as follows : " *Provided always*, and this policy is issued and accepted by the insured upon the following express conditions and agreements " (omitting the first). 2d. " If, however, any fraud should be committed against said association, in the statements made in the application by the insured, *and upon the faith of which this policy is issued,* then and in such case this policy shall be null and void, and all payments made thereon shall become forfeited to the association."

It is well settled that all stipulations and conditions contained in the body of an insurance policy are warranties to the absolute truth of which the parties have pledged themselves, and any deviation from which will defeat a recovery ; and that they are not mere representations or statements which will or will not have that effect, accordingly as the court and jury may regard them as material to the contract. Bliss on Life Insurance, § 55 ; May on Insurance, § 183.

While it is not so conclusively settled that the same effect will follow, if the statements, instead of being embodied in the policy, are contained in any other paper written or signed by the party, which is so referred to in the policy, as to be made a part of it, the weight of authority favors this view.    Bliss on Life Insurance, § 57, and authorities there cited.

In order to conform literally to the language of the courts in the decisions made on this subject, it is usual to insert in the modern policies of insurance an express declaration that the application is made a part of the instrument ; but we cannot deem that a literal stipulation to that effect is necessary.    It is rare, indeed, that a special form of words is required in law to produce a particular effect in matters of contract, and it is familiar learning that no particular words are essential to create a warranty.    It is not every reference in the policy that will make the paper referred to a part of it, but those only which either so declare, or are plainly intended to be the basis of the contract, and upon the faith of which it is expressly stipulated that the policy is issued.    *Miles* v. *Connecticut Mut. Life Ins. Co.*, 3 Gray, 580 ; *Kelsey* v. *Universal Life Ins. Co.*, 35 Conn. 225.    Looking to the application in this case, we find that the applicant agreed, in the most explicit and solemn manner, that the policy which she was to receive should be void if her statements were either untrue or fraudulent, or if she had been guilty of any concealments or suppressions. Turning to the policy, we find a recital that it is issued in consideration of the statements in the application, and a further declaration, that it is issued " upon the faith of those statements."

In any ordinary contract between man and man, there could be no doubt that these recitals made the statements part and parcel of the agreement, and that their substantial truth was warranted by the party making them.    Suppose, for illustration, that during the existence of slavery in this State a vendor had made a written proposition to sell a slave, accompanied by a statement as to his past and present health and history, couched in the words of the application for insurance in this case, and with the agreements and stipulations therein contained, and had received from a party at a distance an obliga-

tion to pay a certain price, phrased, as far as might be, in the language of this policy, can we doubt for a moment, that, if the statements in the proposal were shown to be untrue, the obligation to purchase would be avoided?

We conclude that the responses in the application were so made part and parcel of the policy, that they became, if not technical warranties, at least representations as to the substantial truth of which the parties pledged themselves, regardless of their fancied materiality. It follows, therefore, that the declaration in the second proviso, that the instrument was to be void if any fraud had been practised in the application, must be construed to embrace legal or constructive fraud, as well as moral *mala fides;* that it was used as a comprehensive word to embrace all statements untrue in fact, as well as those deliberately fraudulent. Any other construction nullifies the whole scope and obvious intent of the two instruments taken as a whole, and violates the maxim *res magis valeat quam pereat.* The application and the policy, constituting but parts of an entire contract, are to be read as one instrument, and such construction is to be adopted as renders them harmonious. This is accomplished by giving to the word "fraud" its legal meaning, by which will be embraced misstatements by which the company has been deceived, though not fraudulently intended by the applicant. To limit it to designed and intentional *mala fides* is to do violence both to the letter and the spirit of the other portions of the instrument.

The court below erred in giving instructions for the plaintiffs, announcing a different rule, and in refusing those asked by the defendants, which were in accordance with these views.

We might, perhaps, have rested this case on the proposition, that the misstatements of which the applicant was guilty were manifestly as to matters material to the contract, and, therefore, according to all the authorities, avoided the policy. We have preferred, however, to consider the other questions, both because of the peculiarity of the second proviso, and because this is the first case in this State involving a question, than which there is none more vexed in modern jurisprudence. No man can read the history of the struggle between the

courts and the insurance companies on the question of what false statements, made by the applicant, will avoid the policy, as that history is developed in the adjudged cases, without perceiving a manifest disposition to apply to such agreements a rule far more rigid than that which governs ordinary contracts. However commendable the disposition to protect unsuspecting, and frequently ignorant, men from the evil consequences of agreements into which they have been entrapped by cunningly and obscurely worded conditions, so written or printed as to escape observation, there can be no justification for disregarding, in their behalf, fundamental principles of law, or relieving them from engagements as to which there is no pretence for charging fraud. If the insurance companies, conforming their policies to the requirements of each successive decision, have protected themselves against all possible loss by any misrepresentation, no matter how insignificant or unintentional, it would be most unseemly in the courts to seek, by new exactions, to nullify these advantages. It is neither the duty nor the right of courts to protect adults against the consequences of their agreements incautiously entered into. Their functions are exhausted when they construe and enforce them as written.

Mrs. Leflore having stated that she "had never met with any accidental or serious personal injury," and it having been shown that in fact she had been in a railroad-car a few months before, which had been thrown from an embankment, and that she had thereby sustained some injury, it was proposed to follow this up, by proving that she instituted suit for damages against the railroad company; and for this purpose the record of the suit was offered in evidence, but was by the court excluded. Under the view taken by the court below, of the necessity resting upon the defendants to show bad faith upon the part of the insured, this ruling was manifestly erroneous. Upon the question whether she had omitted to speak of this accident, because deemed insignificant, or because she desired to conceal a knowledge of it from the company, the fact that she regarded the injury sustained as sufficient to justify a suit for damages, was a pregnant circumstance. It is undoubtedly true that the

unsworn pleadings of a party cannot be introduced against him as admissions of the statements therein contained, because they speak the language of the lawyer, and not of the client; but the defendants in this case had the right to show that the suit had been brought; and this could only be done by the record. It would have been proper for the court to instruct the jury that the language of the pleadings was not to be regarded as that of Mrs. Leflore; or it might, perhaps, have excluded them altogether, if the fact of the institution of the suit had been admitted, or been allowed to be shown by parol.

After the reading of the deposition of Dr. Choppin, detailing the dangerous illness of the insured two years before the issuance of the policy, the medical examiner of the company, who had approved Mrs. Leflore's application for insurance, was asked whether if he had been advised of such illness, he would have given said approval, or whether his company would have accepted the risk. The court refused to allow a response to the question.

As to whether such an interrogatory is proper, and the response admissible, the authorities are quite conflicting.

Against their admissibility are the following cases: *Durrell* v. *Bederly*, 1 Holt, N. P. 283; *Jefferson Ins. Co.* v. *Cotheal*, 7 Wend. 72; *Mulry* v. *Mohawk Valley Ins. Co.*, 5 Gray, 541; *Lyman* v. *State Mut. Fire Ins. Co.*, 14 Allen, 329; *Rawls* v. *American Mut. Ins. Co.*, 27 N. Y. 282.

In favor of their admissibility are the following: *Berthon* v. *Loughman*, 2 Stark. N. P. 258; *Webber* v. *Eastern Railroad*, 2 Met. 147; *Kern* v. *South St. Louis Mut. Ins. Co.*, 40 Mo. 19; *Hawes* v. *New England Ins. Co.*, 2 Curtis, C. C. 229; *Hartman* v. *Keystone Ins. Co.*, 21 Penn. St. 466.

Inasmuch as we have held that the statements made in the application were all material, and this interrogatory will therefore be of no practical importance on a second trial, we decline at present to decide upon its admissibility.

There was proof introduced by the plaintiffs below, tending to show that, in point of fact, Mrs. Leflore did truly inform the agent and the medical examiner of the company, at the time of

. her application, in relation to some of the matters as to which she is charged with misrepresentations; that these gentlemen considered them as of no consequence, and themselves wrote the answers, which she afterwards read over and signed.  No instruction was asked on this subject in the court below, nor is any point made upon it in this court.  If it could be shown to the satisfaction of a jury that this state of facts existed as to all the matters in relation to which untrue statements are found in the application, it would present a question of great importance, which has attracted of late considerable attention in the courts, but upon which we express no opinion.

*The judgment is reversed and cause remanded.*