J. Solomon Coplin *v.* Woodmen of the World.

[62 South. 7.]

1. Insurance. *Application. Misrepresentations. Effect. Code* 1906, *section* 2676.

Where an application for insurance and the answers to questions relative thereto were prepared by the examining physician, who stated that the applicant had long been absent from home and knew but little about his family history, misrepresentations in the application as to the number of the applicant's brothers and sisters who were dead, will not avoid the policy of insurance when such misstatements or omission to answer questions in the application was not done with any purpose or attempt to wilfully or knowingly deceive the insurance company.

2. Same.

Where because of the illiteracy of the insured and that of his parents, the surname of the applicant was spelled in different ways and for the same reason his given or Christian name varied, a misstatement of his name in the application did not avoid the benefit certificate, there being no mistake in the party actually intended to be insured.

3. Insurance. *Misrepresentations. Age. Code* 1906, *section* 2676.

Under Code 1906, section 2676 so providing, any misstatement of age in any policy, certificate, or contract of life insurance, does not invalidate the same; but in such cases the beneficiary shall

only recover such amount as the premiums paid would have purchased at the insured's actual age, reckoning according to the rate table of the company.

APPEAL from the circuit court of Monroe county.

HON. J. H. MITCHELL, Judge.

Suit by J. Solomon Coplin against the Woodmen of the World. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*M. C. Young,* for appellant.

Any misstatement of the age of the deceased, W. E. Coplin, will not avoid the beneficiary certificate, and the peremptory instruction, for that reason, should not have been given. Code 1906, section 2676.

The plaintiff below was entitled to have considered all the facts in evidence as absolutely true, every inference from them to maintain the issue. If the evidence is sufficient to warrant a verdict for the plaintiff in any view of it which might be legally taken, the evidence for the plaintiff below should not have been excluded, and the jury directed to find for the defendant below. *Whitney* v. *Cook,* 53 Miss. 551; *I. C. R. R. Co.* v. *Boehms,* 70 Miss. 11; *McCaughn* v. *Young,* 85 Miss. 277; *Brister* v. *I. C. R. R. Co.,* 88 Miss. 431.

One witness, Lee M. Coplin, testified that the insured, W. E. Coplin, was his brother. Together with a multitude of other facts, circumstances and inferences, J. Solomon Coplin, the appellant here, is the brother of the deceased, and the rightful beneficiary named in the beneficiary certifiate; therefore we think the court below erred in excluding the evidence for the plaintiff, and instructing the jury to find for the defendant, on the ground that the appellant in this case is not the brother of the deceased, W. E. Coplin.

The remarks of the examining physician in the application are, ''This applicant don't seem to know much of

his family, says he has been away from home for years. But I find him to be a strong, healthy man." Also there are continuous answers of "Don't know" in the application. Notice especially the "Don't knows" in the spaces opposite the questions as to his family history.

W. J. Briscoe stated that he took the application of the insured, W. E. Coplin, and also stated that when the application was taken, W. E. Coplin said that he didn't know much about his family history, that he had been away from home a long time, that he would state the very best he could, and give the best information he could as to his family history, or something to that amount. J. Solomon Coplin said that his deceased brother had been away from home a long time, and he said that he (brother) didn't know how he (brother) was standing, how his age was, and he (brother) didn't know anything about none of us hardly. There were corrections in the application, made after it was first written. Does not this evidence, together with all the legal inferences that may be drawn from it, make a state of facts in which there were no false warranties made in the application; but that the deceased disclosed all that he knew, and that his answers to questions were mere guesses, at the time of the application? We think this state of facts forbids the granting of a peremptory instruction for the defendant below. *Stiles* v. *Inman,* 55 Miss. 275; *Life Association* v. *Ogletree,* 77 Miss. 7.

Now, the appellant should not be turned down in a Spelling Bee with appellee, in which appellee itself (standing foot to begin with) accepted in the application itself, two different ways of spelling the name of the deceased, W. E. Coplin. Since the family name is spelled differently by the Coplins in the family record, the Bible, and in the application and there is no certain rule by which to spell surnames like this one, and the pronunciation is the same for all the different ways of spelling the name, then no peremptory instruction to find for the

defendant below, can rightfully and legally be predicated on a false warranty as to the way the name of the insured, W. E. Coplin, is spelled.

This case presents vital questions of fact, which should have been left for the jury to determine. All the questions of knowledge, intent, and materiality, in the terms and conditions in the application and the beneficiary certificate, and all the disclosures made at the time of the making of the application for membership, were questions of fact, which ought to have been determined by the jury. *Insurance Co.* v. *Miazza,* 93 Miss. 18 and 422; *Life Association* v. *Ogletree,* 77 Miss. 7; Bacon on Benefit Societies & Life Insurance, page 229, section 219, and cases there cited.

The controverted points in this case are not governed by or parallel to the controverted points in the case of *Co-operative Association* v. *Leflore,* 53 Miss. 1, and *American Insurance Co.* v. *Mahone,* 56 Miss. 180. In these cases the insured made untrue statements about the facts and diseases which lead or tended to lead to the death of the insured parties, thereby attempting to fix liability upon the insurers by means of material false and fraudulent warranties. Not so in the case before the court, the insured in this case made no false warranties as to any ailment or diseases of himself, or of any sickness or disease of any member of his family that might be transmitted or communicated to him, by them. The facts in this case show that W. E. Coplin came to death by the hand of a murderer, and not by means of any disease or other ailment, about which he made any statements in his application to become a member of the Woodmen of the World.

*Paine & Paine,* for appellant.

As to the warranty of Coplin (the assured) of his age, and the number, sex, age and death of his brothers and sisters. The evidence of appellant and his brother both

show, and there is no contradiction that at the time the applicant made application for membership he told Briscoe, the agent of the appellee, who was taking his application, that he was not positive about his family history; that he had been away from them for many years. Briscoe also testified to these facts as being true; it appears also on the face of the application in a footnote under the head of "Remarks by Dr. Curry, the Camp Physician," as follows: "This applicant don't seem to know much about his family, says he has been away from home for years, but I find him to be a strong, healthy man."

Surely no one was misled by these statements of the applicant; no one was injured pecuniarly by these statements; this original application had to be sent to headquarters of the appellee before it was accepted. It was sent and we find that it was accepted and passed upon by all of the high officials of appellee's order and then the certificate was issued to William E. Copland. See the endorsements on the back and face of the original certificate, record page 49. We want this court to bear in mind that the trial court under the motion for a peremptory instruction held that the application and statements therein made by the applicant being untrue breached the right of his beneficiary to recover.

Under the title "Family History; with directions to Physicians" in the application, the instructions say "The answers 'don't know' without explanation are not satisfactory." But the application evidences the fact that the applicant in this case repeatedly answered, "Don't know," and yet with all the "Don't know" answers in this application all of the head officials of appellee accepted the application and issued the certificate. The inevitable conclusion is that these statements by the applicant were not considered warranties by the appellee or if they were considered warranties, then they were waived by the order; when this court will consider and

see from this application that the physician of the appellee stated under the head of "remarks" in the face of the application that the applicant did not seem to know much about his family history; and when the court will remember that the agent of the appellee who took this application was told that the applicant did not know much of his family and had been away from home ever since he was a child. We submit that after permitting these answers to go unexplained by the applicant or rejecting these answers as unsatisfactory or of giving the applicant a chance to explain them and after he had expended money necessary to join the order and keep up his dues, it is, we submit, too late to take advantage of them by pleading that these answers were warranties and untrue and that the order had not waived these warranties and that hence he could not recover or his beneficiary could not recover under this certificate. To do so is to violate the law as announced by this state and other states. See *Globe Mutual Life, etc.,* v. *Dora Wagner,* 52 L. R. A., page 649; *Sovereign Camp W. O. W.* v. *Dismukes,* 38 S. R., page 351.

This court will not be unmindful of the rule of law in this state that all contracts of insurance of all kinds and applications for such insurance are construed most favorably and liberally in favor of the insured and beneficiary as against the insurance company. See *Murphy* v. *Independent Order, etc.,* 77 Miss. 830; *Morgan* v. *Independent Order, etc.,* 42 S. R., page 791; *Grand Lodge K. of P.* v. *Jones,* 56 S. R., p. 459.

What is the object of having an applicant give a statement as to the family history? Is it not for the purpose of ascertaining the liability, to ascertain inheritable or family diseases so as to form an estimate as to the risk? It certainly is. Then in the case at bar the applicant gave the number of dead sisters and brothers but could not give the cause of death and did not give the correct number and so stated, and this statement was accepted

by the appellee as being true and the appellee under the doctor's certificate under the head of "remarks" accepted the applicant because the doctor said he found him to be a "strong, healthy man." The evidence in the case shows that the applicant did not die from a natural cause, sickness, but from an accidental cause; hence the reason for the warranty having failed and having been waived by appellee, it should not, that is, the answers of the applicant, should not have been potential in deciding this case and the court erred in sustaining the motion predicated upon this.

The evidence further disclosed the fact that Copland, the applicant, was an illiterate man utterly incapable of perpetrating a fraud upon so guileless an organization as the appellee is shown to have been. Copland's answers are shown to have been frank and truthful; his two brothers who testified in the case corroborate the statement of his long absence from the family and hence his inability to keep up with the family. He is shown to have had no communication with them, but was absent from them and consequently could not give definite data; but every representation and warranty made by him was to be taken and considered in connection with and in explanation of the remarks by the doctor who in his application said that Copland did not know much about his family, he having been away from them for years; and these representations and warranties thus qualified by the applicant were known and accepted by the appellee in such qualified form. In addition to these written qualifications Briscoe, the agent of appellee, had personal knowledge as to the limited knowledge of the applicant, to the facts stated by him, to his family history, and to the difference in the statement as to applicant's age.

The law of the state of Mississippi will not avoid the policy simply on account of a misstatement of age but only reduces the policy in proportion to his true age. See Section 2676, Code of 1906.

Hence this, if a warranty, would not justify the court in giving a peremptory instruction but on the contrary entitled the question to go to the jury under proper instructions as to what the real age of appellant was. As to the warranty of name and the difference in the spelling thereof by applicant.

The applicant, Copland, is shown and proven to have been Williams Edward Olfees Coplin, or as he spelled it, Copland. The doctor who made out the application spelled his name two different ways, Copeland and Copland; the brothers who testified in the case said the correct spelling of the name was Coplin. In the family Bible the name is spelled differently. The writing in the Bible was done by a Mrs. Shaw and was not done by the parents of the applicant; the parents being unable to write; an inspection of the Bible discloses the fact that several of the children mentioned in the family history of the Bible have three Christian names. One of the brothers who testified in the case has three Christian names. This evidences the fact that it was but natural that this illiterate man, the applicant, should leave out the name Olfees in his application. Such an occurrence happens to many people; not only to the illiterate but also to the mighty and high in office. The most notable instance occurring to us of this fact is that of the distinguished speaker of the house of representatives, Mr. Clark.

By following this thought we have but to look at the ancient history of any family and we will find the spelling of the name undergoing many changes and frequently some of the Christian names being omitted by the user. We have personal knowledge of a distinguished banker of Aberdeen, Miss., who spells his name different from other members of his family. The most notable instance we can recall of a man dropping one of his Christian names was that of Mr. Cleveland, a former president of the United States. Naturally the applicant, illiterate and having

been away from his family would not know how to spell his name and would not be inclined to trible up his name; naturally he would be supposed to spell his name according to sound and the shortest and quickest way, especially on the occasion of his signing the application; as it appears the applicant at the time of the signing of the application was busily engaged in firing a saw mill with saw dust, an occupation that doubtless required the time and muscle of this man.

We respectfully submit that all of these grounds of the motion by which the case was taken from the jury and a peremptory instruction for appellee given were too hypercritical and should not have been influential in causing the judge to grant the peremptory instruction.

*Geo. T. Mitchell,* for appellee.

The record shows that William E. Copland, the insured, stated in his application to the company for insurance, and which statements he warranted to be true, and as forming the basis of the contract between him and the company, that his name was William E. Copland, and that his brother's name, the beneficiary, was J. Solomon Coplant; whereas, plaintiff says that the insured's name was William Edward Olfes Coplin, and that the beneficiary's name should have been J. Solomon Coplin.

The insured further stated that he was born the fifth day of December, 1883; whereas, plaintiff says and proves that his brother was born December 5, 1871, twelve years before the date given by the applicant.

The insured further warranted that, at the time of making said application, he had three brothers dead; whereas, the brother of appellant had, at that time, four brothers dead. The insured further warranted that, at the time of making said application, he had three sisters dead; whereas, the brother of appellant, at said time, had five sisters dead. Therefore, I respectfully submit that the insured was at the time of making said application,

sailing under an assumed name for some reason, and made false and fraudulent warranties as to his family history. Either one of these theories was sufficient for the court below to grant the peremptory instruction asked for.

I do not deem it necessary to argue to this court that no insurance company, deserving of respect, would, for a moment, consider the application for insurance of a man who was sailing under an assumed name. This fact of itself would, undoubtedly, have caused the company to reject the application, had they been advised of the facts at the time. In fact, W. J. Bristow, a witness for the plaintiff in the court below, and an officer of the company, stated positively that if he had known at the time that the applicant was traveling under an assumed name he would never have recommended him to the company, and without this recommendation the policy never would have been issued. While it may be true that parties sometimes change their names, as did Mr. Cleveland, and the distinguished banker of Aberdeen, Mississippi, as stated in brief of counsel for appellant, yet, when one applies for a policy of insurance, and warrants that the name given by him is correct, this warranty should be enforced, especially against us smaller lights who might have some ulterior motive in declining to give our correct name, and an insurance company has a right to know the correct names of its members. Lee Maryland Coplin, who claims to be a brother of the insured, states that his father and his mother and sisters and brothers spelled their names Coplin.

As to the age of the appellant, of course this would not of itself vitiate the policy, but it simply goes to show that the applicant was still seeking to conceal his identity for some reason, or else he is not a brother of applicant. He stated positively to the company that he was born December 5, 1883; whereas, the record in the family Bible, which was introduced in evidence and which is now

before this court, shows that Edward Olfes Coplin was born December 5, 1871. It matters not how ignorant a man may be, he cannot make so great a mistake as twelve years in his real age, especially where he is under forty years of age, as was the case here. I desire especially to call the attention of the court to the affidavit made an exhibit to Lee Maryland Coplin's testimony in which he swears to the record of the family Bible as it appeared on February 8, 1910. The Bible record then contained no entry as to any William E. Coplin, but the recital at that time in the Bible record was "Edward Olfes Coplin, born December 5, 1871," but now the Bible record recites "William Edward Elfes Coplin, born December 5, 1871." Even a casual examination of the Bible record shows that the name William has been added to the name Edward Olfes Coplin since the regular entry was made, as it does to every other entry relating to Edward Olfes Coplin, and Lee Maryland Coplin in his testimony in the court below stated positively that he made that alteration. It is true he makes a feeble effort at an explanation of the matter, but his explanation is absurd and ridiculous, and if this court could have witnessed the demeanor of this witness upon the stand, as did the circuit judge, then you could easily see and understand why the court below attached no importance to his testimony, and gave to it no credence.

Again, the applicant stated that he had only three brothers dead and three sisters dead; whereas, Edward Olfes Coplin, at the time of making said application, had four brothers dead and five sisters dead. Conceding, for the sake of argument that the applicant was really a brother of J. Solomon Copland, I submit that this serious misrepresentation about his family history avoids the policy. If he had more brothers and sisters dead than he represented, then the insurance company had a right to inquire into the cause of their death, the ages at which they died, and other matters which they might deem nec-

essary. This is just as serious a misrepresentation as if the applicant had stated that none of his brothers and sisters were dead. It will not do to say that the company had notice of the ignorance of the family history of the applicant because of the fact that the examining physician stated on the application that this man did not seem to know much of his family history, because in answering these particular questions he did not state that he had any doubt as to the number of brothers and sisters living and dead, but he made the statement above set forth as being absolutely true, and the company acted upon it, as they had a right to do. While it is true the *Miazza case* holds that where there has been a partial statement of the facts then this is sufficient to put the insurance company upon notice, but in this case the applicant did not make his statement as a partial statement but warranted the answers to the quetsions to be absolutely true. The case of *Leflore* v. *Co-operative Life Association,* 53 Miss. 1, says: "A contract of insurance, like other contracts, is avoided by an untrue statement by either party as to a matter vital to the agreement though there be no intentional fraud in the misrepresentation."

The same case holds further: "All stipulations and conditions contained in the body of an insurance policy are warranties, to the absolute truth of which the parties have pledged themselves, and any deviation from which will defeat a recovery; and they are not mere representations or statements which will or will not have that effect, accordingly as the court and jury may regard them as material to the contract."

In conclusion I desire to say that the court below, after hearing the testimony, and seeing the demeanor of the witnesses upon the stand and their manner of testifying very properly excluded the evidence of plaintiff and granted the peremptory instruction.

Argued orally by *Thomas F. Paine* for appellant.

Reed, J., delivered the opinion of the court.

Appellant brought suit against appellee to recover, as beneficiary, the amount of an insurance policy, or certificate, issued by appellee on the life of William E. Copeland. When appellant had introduced all of his testimony and rested his case, appellee, defendant in the court below, presented the following motion:

"The defendant moves the court to exclude the testimoney offered by the plaintiff in this case, because the insured, William E. Copeland, in his application to the company, warranted all his answers contained in the application to be true, and that, if they were not true, any policy issued on that application would be void, and that in said application be warranted his name to be William E. Copeland, whereas the truth of the matter is that his name was Edward Olfess Coplin; because in his application he warranted he was born on December 5, 1883, whereas the truth of the matter is he was born December 5, 1871; because in his application he states that he had two brothers living and three brothers dead, whereas truth of the matter is he had five brothers dead, and stated he had three sisters dead, and whereas the truth of the matter is he had four sisters dead, or more than the number set out in the application; and because of the fact that the party, William E. Copeland, who made application, was not a brother of J. Solomon Coplin, the plaintiff in this case."

From the action of the lower court in sustaining the motion and instruction the jury to find for defendant, the appellant prosecutes this appeal.

The policy of insurance, or beneficiary certificate, was issued to William E. Copeland on September 16, 1908, and was made payable at his death to his brother, J. Solomon Copeland. In July, 1909, insured was killed in the state of Kentucky, and his remains were buried at Crump, Tennessee. It seems that the amount of the certificate was paid to a man who fraudulently claimed

to be the beneficiary, and that after considerable trouble, and through the assistance of the brothers of the insured, appellee recovered the same. It appears that the insured was an illiterate man, and that he left his parents and his home when a mere lad, and had but little association with any of his family. The testimony of the brothers of the insured, Lee Maryland Coplin and J. Solomon Coplin, contains sufficient statements of family history and the relationship between them and the insured to authorize the jury to find that the insured and the beneficiary were brothers, as stated in the insurance certificate, or policy.

Appellee, in its motion to exclude the testimony, asserts that the application for the policy contained erroneous and untrue statements (1) as to the name of the insured; (2) as to his age; and (3) as to the number of his brothers and sisters, and their deaths.

The application, it appears from the handwriting thereof, was not written by the insured. The answers relative to his ancestors and his brothers and sisters were written by the examining physician. The answers show that he knew nothing of any of his ancestors back of his father and mother, and opposite the questions relative to his brothers and sisters we find written by the physician the words "Don't know," and "Don't know any of their ages when they died." Following the certificate by the physician is the following written by him: "This applicant don't seem to know much of his family; says he has been away from home for years. But I find him to be a strong, healthy man." We do not see, from the application and from the testimony in the record, anything to show that the insured made a misstatement or omission in answering the questions in the application with any purpose or attempt to willfully or knowingly deceive the appellee.

We find the following statement of law on this subject in 25 Cyc. 801: "But so far as the questions pro-

pounded in the application call for answers founded upon the knowledge or belief of the applicant, a misstatement or omission to answer will not avoid the policy, unless willfully and knowingly made with an attempt to deceive.'' And touching the materiality of misrepresentations in applications, we quote from the same volume, on page 805, the following: ''Misrepresentations defeat a policy so far, and only so far, as they are material to the contract; and representation is material in such sense when knowledge of the truth as to the fact misstated might reasonably influence the company in determining whether or not to enter into the contract as made.''

In the case of *Insurance Co.* v. *Miazza,* 93 Miss. 18, 46 South. 817, 136 Am. St. Rep. 534, Judge MAYES, delivering the opinion of the court, said: ''We are not prepared to hold that a stipulation in the contract of insurance of the character above quoted will have the effect of making every statement made or contained in an application of insurance material to the risk, thus avoiding the contract, whether such statement be in fact material. This would seem to have been held in the case of *Cooperative Life Association* v. *Leflore,* 53 Miss. 1; but an examination of the facts shows that in that case the facts misstated were material. Courts are not given to avoiding contracts for misrepresentations of an immaterial nature, and to adopt this rule in its application to contracts of insurance, merely because it is stated in the contract that any misstatement should be deemed material, can subserve no purpose of right.''

In Cooley's Briefs on the Law of Insurance, vol. 3, page 1952, is the statement that ''it is a well-established rule that, to avoid the policy on the ground that there has been a misrepresentation, the false statement must be of some fact material to the risk.'' Mr. Joyce, in his work on Insurance, vol. 2, section 1884, referring to misrepresentations, says that the statements must be made with intent to deceive, or must be statements of some-

thing as positively true, without being known to be true, and at the same time having a tendency to mislead or deceive, in both cases relating to material facts. In Mr. Cooley's Briefs on the Law of Insurance, vol. 3, page 1958, he says: "Where the statements constituting the representations are qualified by the recital that they are made to the best knowledge and belief of the applicant, his knowledge and good faith are determining factors as to the effect on the policy, if such statements are false."

It is plain that appellee and its agent were clearly informed that the applicant had little knowledge about his family history. Certainly appellee could not have considered the information given in the answers to the questions as full and definite. Such information was very meager indeed; besides, it will be noted that the examining physician in his report informed appellee that the applicant did not know much of his family, and that he said he had been absent from them for years.

Now, as to the erroneous statement that his name was William E. Copeland, the testimony shows that he was also called Edward Olfess Coplin, and also William Edward Olfess Coplin. A Bible was introduced in evidence. It is shown that this Bible belonged to Lee M. Coplin, and was given to him by his mother July 23, 1884. The Bible was published by the American Publishing Company of New York City, in 1879. The first entries in it are made in the same handwriting, in pale purple ink. It shows the birth of the father, Jefferson Coplin, in 1828. It is shown that these entries were not made by the parents of the insured and the appellant, because they were illiterate and could not write. Considering the dates mentioned and the physical appearance of the entries in the Bible, together with the testimony in the case, we believe that only limited weight should be given to the entries therein. The entry under head of "Births" shows that Edward Olfess Coplin was born December 5, 1871. We note that the surname of

the family is spelled in the Bible entries "Coplin," as well as "Copelin." In the application itself the name is spelled in two different ways—"Copeland" and "Copland."

However, if the testimony shows that William E. Copeland, the insured, was the same as Edward Olfess Coplin, who was the brother of appellant, there is no reversible error in this case arising from any misstatement or name. "A name is a word to designate a person or thing. That word by which a person is commonly designated in the community in which he lives is, for all practical purposes, his name." *Miller* v. *George,* 30 S. C. 526, 9 S. E. 659. At common law the office of a name was merely to identify. "Since the time of the Norman Conquest, a legal name has consisted of one Christian or given name, and of one surname, patronyonic, or family name. The surname or family name of a person is that which is derived from the common name of his parents, or is borne by him in common with other members of his family. The Christian name is that which is given one after his birth, or at baptism, or is afterwards assumed by him, in addition to his family name." *Schaffer* v. *Levenson Wrecking Co.,* 82 N. J. Law, 61, 81 Atl. 434.

In Snook's Petition, 2 Hilt. (N. Y.) 566, it was said that a man's name is the mark by which he is distinguished from other men. At common law a man could change his name, in good faith, and for an honest purpose, and adopt a new one, by which he could be generally recognized. In the case of *Smith* v. *U. S. Casualty Co.,* 197 N. Y. 420, 90 N. E. 947, 26 L. R. A. (N. S.) 1167, 18 Ann. Cas. 701, it was decided that the fact that an applicant for accident insurance signs his adopted name in stating his name in accordance with the requirements of the application does not constitute a breach of warranty, where the name so given was one which he had adopted some year before making the application, and was the one by which he was known and under which he generally did business.

There are many cases of persons who have been prominent in the world's history who have changed their names at some time during their lives, or have been known by more than one name. This practice has been so common, and the cases so numerous, that we do not deem it necessary to mention any for illustration. In 29 Cyc. 271, we find the following: "It is a custom for persons to bear the surname of their parents, but it is not obligatory. A man may lawfully change his name without resort to legal proceedings, and for all purposes the name thus assumed will constitute his legal name, just as much as if he had borne it from birth." And on the same subject 21 Am. & Eng. Ency. of Law (2 Ed.), 311, states: "At common law a man may lawfully change his name, or by general usage or habit acquire another name than that originally borne by him, and this without the intervention of either the sovereign, the courts, or Parliament; and the common law, unless changed by statute, of course obtains in the United States."

It will be easily seen that because of the illiteracy of the insured, and that of his parents, and perhaps other members of his family, the surname was spelled in the different ways; and for the same reason we may understand that his given or Christian name varied.

Answering the objection as to the misstatement by insured of his age in his application, it is provided in section 2676 of the Code of 1906 that any misstatement of age in any policy, certificate, or contract of life insurance shall not invalidate the same; but in such cases the beneficiary shall only recover such amount as the premiums paid would have purchased for at the insured's actual age, reckoning according to the rate tables of the company.

For the reasons already shown, we do not believe that the policy should be held void because of any error made by the applicant in the statements relative to the number of his brothers and sisters and their deaths.

We believe that the case should have been submitted to the jury on the question as to whether the insured and the beneficiary were brothers.

.          *Reversed and remanded.*