McRAE, Justice,
for the Court:
This appeal arises from a March 28, 1991, order of the Leake County Circuit Court affirming an order of the Workers’ Compensation Commission in favor of the insurance carrier, Commercial Union Insurance Company. At issue is whether the employer, Marathon Freight Lines, Inc., was insured by Commercial Union at the time its employee, Billy Cooper, was injured. While we affirm the award of benefits to Cooper, we find that the Commission was clearly erroneous in its determination that Commercial Union had provided effective notice of cancellation to its assured and the Commission, as required by Miss.Code Ann. § 71-3-77 (1989), and reverse the decisions of the circuit court and the Commission.
I.
Billy Cooper was seriously injured in an October 4, 1988, motor vehicle accident while driving a truck for Marathon Freight Lines. His employer was covered by a workers’ compensation policy issued by Commercial Union Insurance Company, renewable on an annual basis, which was in effect from January 25, 1988, through January, 1989. After neither his employer, Marathon Freight Lines, nor Commercial Union paid for his medical treatment or provided temporary disability benefits, Cooper filed a petition to controvert with the Workers’ Compensation Commission on November 16, 1988. As its affirmative defense, Commercial Union claimed that at the time of the accident, the insurer had no policy in effect with Marathon; rather, the policy had been “effectively cancelled” by Marathon’s failure to pay the renewal premium for 1988.
At the time of Cooper’s accident, Marathon employed more than five people and was running five company-owned trucks and four or more leased trucks. It withheld two percent of the gross income from each haul for workers’ compensation coverage. Marathon procured its workers’ compensation insurance through a Fox-Everett Insurance Company broker, Tommy Wilkerson. It was assigned to Commercial Union as part of the Southeast assigned risk pool.
As the result of a payroll audit covering 1986 and 1987, Commercial Union and Marathon were in disagreement over premiums owed for that period. Commercial Union claimed that many of Marathon’s drivers were not being paid a large enough percentage of the' load figure and therefore, the workers’ compensation payments were not as high as they should have been. Consequently, Commercial Union asserted that Marathon owed $16,000.00 in additional premiums *857 for 1986 and $22,000.00 for 1987. Marathon disputed these figures and refused to pay any back premiums. Wilkerson, too, believed Commercial Union’s figures to be incorrect and was still attempting to resolve the dispute as late as April, 1988.
On January 29, 1988, Commercial Union mailed Marathon a renewal quote. It indicated that the workers’ compensation policy would expire on January 25, 1988, and that failure to remit the premium or an interim deposit by April 8, 1988, would “result in non-issuance of your policy without further notice to you.” In his deposition, Wilkerson testified that the renewal quote was based on those disputed figures.
Wilkerson sent a certified letter dated April 6,1988, to Marathon. It was delivered on April 9th and stated as follows:
Enclosed is our copy of the renewal quote from Commercial Union. As of this date they have not received any monies from you or us for the renewal premium. I know from the figures that have been picked up in the audit, that this premium is based on is incorrect, [sic] [illegible corrections in original] The company is going to have to have the correct numbers, that includes the numbers arrived from the tax returns of the lease operators working for you. It is to the point now that they will go no further on this extension of coverage without those corrected numbers. We have been trying to get those numbers since last December and must have the correct figures to be able to place the Workers’ Comp coverage. Effective 4-8-88 there is no Workers’ Comp coverage in force for Marathon Freight Lines and legally no coverage can be placed with another carrier when there is a debt owed to the prior carrier.
Earlier you had discussed with me that you were thinking of leasing your employees and having their Workers’ Comp coverage handled though the leasing company. This seems like a very appropriate time to do this since there is so much money in question on these old audits. Please call me and advise me of your decision of what you are going to do about your Workers’ Compensation coverage.
Wilkerson stated in his deposition that the letter was intended as a request for the information needed to resolve the past premium dispute, not as a notice of cancellation. He further testified that he was not an agent of Commercial Union, and further, that the carrier had not authorized him to cancel insured’s policies.
On June 9, 1988, six months into the new policy period, Commercial Union filed a Form A-24 with the Workers’ Compensation Commission indicating that its policy with Marathon was cancelled effective January 25, 1988, for nonpayment of the renewal quote. It further notified the Southeastern Council on Compensation Insurance that no policy would be issued to Marathon because no premium had been paid.
The Administrative Law Judge, in a July 31, 1989, opinion, found that Wilkerson was not an employee of Commercial Union and thus had no authority to cancel Marathon’s policy. He further found that the April 6, 1988, letter did not provide sufficient notice under Miss.Code Ann. § 71-3-77 to cancel coverage. Accordingly, he found that Marathon was covered by the Commercial Union policy at the time of Cooper’s accident and ordered the employer and the carrier to pay for all medical services and supplies; total disability benefits of $198.00 per week from October 4, 1988 to March 20, 1989, when he reached maximum medical recovery; and benefits for a five percent permanent partial impairment to the leg in the amount of $198.00 per week for a period of 8.75 weeks.[1]
Commercial Union appealed the decision to the full Commission, which affirmed the amount of benefits owed but reversed the ALJ on the issue of Commercial Union’s liability for payment thereof. The Commission found that Wilkerson’s April 6, 1988, letter provided adequate “notice in writing” of cancellation to the assured, Marathon Freight, and that the submission of the Form A-24 on June 9, 1988, provided the Commission with sufficient notice. It further noted that the statute is silent as to who should *858 provide the required notice to the insured. In its July 6, 1990, order, the Commission ordered Marathon to pay the benefits owed and dismissed Cooper’s case against Commercial Union.
Cooper appealed the Commission’s ruling to the Winston County Circuit Court. The circuit court affirmed the Commission order on March 28, 1991, simply finding that the order “does not contain error of law or fact.”
II.
Cooper contends that his employer, Marathon Freight, was insured under a workers’ compensation policy issued by Commercial Union at the time of his accident. Commercial Union, however, asserts that Cooper’s employer, Marathon Freight, solely should be liable for his damages because the insurer had effectively cancelled its worker’s compensation policy with Marathon by virtue of the language used in the April 6, 1988, letter sent by Tommy Wilkerson, an agent of Fox-Everett Insurance Agency, as well as in the January 29, 1988, renewal quotation. We, however, find that neither the letter nor the renewal quote provided Marathon with effective notice of cancellation.[2]
Miss.Code Ann. § 71-3-77 (1989), which governs workers’ compensation insurance policies, provides as follows:
(1) Every contract for the insurance of the compensation herein provided, or against liability therefor, shall be deemed to be made subject to the provisions of this chapter, and provisions thereof inconsistent with the chapter shall be void. Such contract shall be construed to grant full coverage of all liability of the assured under and according to the provisions of the chapter, notwithstanding any agreement of the parties to the contrary, unless the insurance department has heretofore by written order specifically consented to the issuance of a policy on a part of such liability. No such policy shall be cancelled by the insurer within the policy period until a notice in writing shall be given to the commission and to the assured, fixing the date on which it is proposed to cancel it or declaring that the company does not intend to renew the policy upon expiration date, such notices to be served personally or by registered mail on the commission at its office in Jackson, and upon the assured. No such cancellation shall be effective until thirty (30) days after the service of such notice, unless the employer has obtained other insurance coverage, in which case such policy shall be deemed cancelled as of the effective date of such other insurance whether or not such notice has been given.
The purpose of this statute is to provide “assurance to the commission that eligible employees are protected under the act.” Ar-ender v. National Sales, Inc., 193 So.2d 579, 583 (1967); T.H. Mastín & Co. v. Russell, 214 Miss. 700, 708, 59 So.2d 321, 323 (1952). We find that Commercial Union’s communications with Marathon Freight and Wilkerson, the Fox-Everett agent, fall short of meeting the statutory objective of providing the notice necessary to assure that eligible workers receive the protection to which they are entitled.
To effectively cancel a workers’ compensation policy, Miss.Code Ann. § 71-3-77 requires that the insurer provide both the Commission and the employer with (a) written notice of cancellation or non-renewal (b) indicating the date of cancellation or nonre-newal (c) served personally or by registered mail. Commercial Union provided the Commission with a Form A-24 on June 9, 1988, indicating that its policy with Marathon had been cancelled on January 25, 1988, because of the employer’s failure to pay the renewal quote. Its communication with Marathon was limited to a January 29, 1988, renewal quote indicating that “failure to remit an annual premium or interim deposit before 4-8-88 will result in non-issuance of your policy without further notice to you.” On April 6, 1988, Tommy Wilkerson, an employee of Fox-Everett, wrote to Marathon stating that effective April 8th, Marathon had no workers’ compensation insurance in force. However, placing that statement within the context of the letter as a whole, it is clear that the amount of the premium owed was still in *859 dispute. Marathon received the letter by certified mail on April 9, 1988. These communications do not provide effective notice to either the Commission or the employer as contemplated by the statute.
We have held that “[t]he same rules applicable to health, fire, casualty, accident, and other insurance policies are likewise applicable to workers’ compensation carriers.” McCain v. Northwestern National Insurance Co., 484 .So.2d 1001, 1002 (Miss.1986). Thus, while we have not articulated what constitutes an effective cancellation of workers’ compensation insurance, we look to other areas of insurance law for guidance. In Transamerica Insurance Co. v. Bank of Mantee, 241 So.2d 822, 825 (Miss.1970) we held that “[c]aneellation of an insurance policy must be definite, clear and unequivocal.”
In Transamerica, the insureds brought an action against their insurer to recover for the destruction of a tractor under a casualty loss policy. As in the ease sub judice, Trans-america refused to pay the loss on grounds that the policy had been cancelled. On November 1,1968, Transamerica had notified its general agent, Clint Peteet, Jr. of the Peteet Insurance Company, that because of a recent loss under the policy insuring the subject tractor, the policy would be cancelled. The agent was instructed to pick up the policy and return it to Transamerica within fifteen days for cancellation. On November 11, the agent wrote to the insureds, stating:
We have been advised by subject company that we will have to replace this coverage within ten days from date of this letter.
We will be glad to place this in another one of our companies. If this is agreeable with you please let us hear from you within the next day or two. We will hold this in our suspense file until we hear from you.
Id. at 822-3. (emphasis in original).
On November 24, 1968, a tractor covered by the Transamerica policy was destroyed by fire. The insurance agent was notified of the loss on November 25, 1968. However, on November 27, 1968, Peteet wrote to the insured, stating that he had been unable to place the coverage with any other company and was returning the check for the premium refund on the Transamerica policy. The letter further indicated that the tractor was uninsured at the time of loss.
The chancellor found that the certified letter, which was dated November 11,1968, and sent to the Bank of Mantee, the lienholder at the time, did not provide a clear and unequivocal cancellation under the terms of the contract of insurance. He further found that a November 15, 1968, letter purportedly sent by Peteet to the tractor owners, Billy and Pete Walker, with the postscript, “Please call about this, you have no insurance. Clint Peteet, Jr.” was, in fact, never mailed, so that the policy was still in force at the time of the destruction of the tractor. Id. at 823-4. We affirmed the chancellor’s finding. In denying Transamerica’s petition for rehearing, we addressed the issue of the definiteness of the cancellation:
In the case now before this Court, the alleged notice itself contains the sentence: “We will hold this in our suspense file until we hear from you.” At the bottom of the alleged notice (written after the signature) is an obscure line — “Please call about this, you have no insurance” — followed by the second signature of the agent. However, previous to this alleged notice, the agent had written the insured advising them that the insurance company required that the policy be replaced within ten days but this letter also contained the sentence, “We will hold this in our suspense file until we hear from you.” There is other testimony that the insured called at the office to the agent and was not informed that the policy had been cancelled.
⅜ ⅜ ⅜ * ¾: ⅜
[T]he question as to whether or not the alleged written notice complied with the requirements of the contract to terminate and cancel the policy at a certain date was for the interpretation and determination of the trial court. The trial court was not bound to give the words set out in the alleged notice the meaning the scrivener now says was intended to be conveyed to the insured. Cancellation of an insurance policy must be definite, clear and unequivocal, (citations omitted.)
*860 Id. at 825. Considering the circumstances surrounding the cancellation, we found that Transamerica did not provide its insured with definite, clear and unequivocal notice of its intent to cancel the policy.
Likewise, in the case sub judice, we find that the circumstances surrounding Commercial Union’s purported cancellation of Marathon’s policy render it ineffective. Contrary to the plain language of the statute, neither the Commission nor the insured was provided with thirty days notice of cancellation in person or by registered mail. Further, there is no question that a dispute existed between Marathon and Commercial Union over the number of employees upon which the renewal quote was based, and further, whether any back premiums were due. Wilkerson’s letter to Marathon clearly indicated that he believed Commercial Union’s audit figures to be incorrect. He testified that he had sent the letter to Marathon not as a notice of cancellation, but to remind the company that he needed correct figures of the number of lease operators it employed. As in Trans-america, the letter advises Marathon to “[pjlease call me and advise me of your decision of what you are going to do about your Workers’ Compensation coverage.”
Commercial Union’s own claims adjuster, Frank Otto, testified that he was unsure whether the carrier had effectively cancelled the policy since cancellation notices were generally sent by certified mail from the home office in Pennsylvania and not from the producer who wrote the policy. Moreover, the February 14, 1989, memo from Commercial Union to Tommy Wilkerson indicates that even the insurer was unsure of whether Marathon had received notice of cancellation or non-renewal. Applying the Transamerica standard, we reject Commercial Union’s argument that Marathon received a definite, clear and unequivocal notice of cancellation.
Assuming arguendo that the language of the communications from Commercial Union and Fox-Everett provided effective notice of cancellation, timely notice was not given to the insured or the Commission. The disputed policy was effective January 25, 1988, through January, 1989. Pursuant to § 71-3-77, an effective notice of non-renewal would have had to have been given thirty days prior to January 25, 1988. It was not. A renewal quote, however, was mailed to Marathon on January 29, 1988. After January 25, 1988, the new policy was in effect. Thus no effective cancellation could be made without first providing the insured and the Commission with thirty days notice. This clearly was not done. Wilkerson’s letter, which Marathon received on April 9,1988, indicated that as of April 8th, there was “no Workers’ Comp coverage in force.” Moreover, the Form A-24 sent to the Commission on June 9, 1988, indicated that the policy had been cancelled on January 25, 1988. The record does not indicate whether that form was served in person or delivered by registered mail as required by the statute. There being no notice of non-renewal given thirty days prior to the effective date of the new policy nor thirty-day notice of cancellation given once the policy went into effect, Commercial Union cannot argue that any notice was timely nor that it provided a definite date of cancellation.
III.
We recognize that the Commission is the finder of facts and upon review by this Court, “its findings and decisions are subject to the normal deferential standards, notwithstanding the AJ’s actions.” Harper v. North Mississippi Medical Center, 601 So .2d 395, 397 (Miss.1992); Walker Manufacturing Co. v. Cantrell, 577 So.2d 1243, 1245 (Miss.1991). Likewise, as we stated in Walker, it is well-established that “the Circuit Courts must defer in their review to the findings of the Commission.” Id., at 1247; Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988). Findings of fact may be determined to have been clearly erroneous if, after reviewing the entire record, this Court is left with the firm and definite conviction that a mistake has been made by the administrative agency, though there may have been slight evidence before the agency to support the finding made. Delta Drilling Co. v. Cannette, 489 So.2d 1378, 1381 (Miss.1986), citing Central Electric Power Ass’n v. Hicks, 236 Miss. 378, 390, 110 So.2d 351 (1959).
*861 Applying these standards of review, we reverse that part of the circuit court’s judgment which affirmed the Commission’s order absolving Commercial Union from liability for payment of Cooper’s damages and affirm the award of workers’ compensation benefits. Based on the evidence in the record before us, we hold that the Commission’s finding that Marathon had received effective notice of cancellation of its workers’ compensation policy is clearly erroneous. Nothing received by the employer from Commercial Union or Fox-Everett provided it with a “definite, clear and unequivocal” cancellation of the policy.
AFFIRMED IN PART; REVERSED IN PART.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, JR. and SMITH, JJ., concur.

. The amount and nature of the benefits owed is not at issue in this appeal.

. For this reason, we do not reach Cooper's question of whether Wilkerson, an employee of Fox-Everett, had the authority to cancel the Commercial Union policy.