DICKINSON, Presiding Justice,
for the Court:
¶ 1. For more than one hundred and thirty years, this Court has held that an insurance company may void a policy when the insured made material misrepresentations during the application process.[1] When this insurance company learned that Michelle Busby had made a material misrepresentation when she applied for the motor-vehicle-liability policy at issue here, it had the policy declared void, so we affirm the circuit judge’s grant of summary judgment.
FACTS AND PROCEDURAL HISTORY
¶2. While driving his mother’s 2003 Chevy Silverado in Rankin County, sixteen-year-old William Busby crashed into Kenneth Tarlton’s car, which in turn collided with a car driven by Katriee Jones-Smith. When William’s mother, Michelle, applied to Safeway Insurance Company for an insurance policy on the Silverado, the application required her to warrant that she had provided the names of all regular frequent drivers of the covered vehicles, as well as all residents of her household fourteen years old or older. Michelle failed to disclose that fifteen-year-old William resided in her home, and Safeway issued her a policy on the Silverado at a premium that was lower than the premium would have been had Safeway known about William.
¶ 3. So after William’s accident, Safeway sought a declaratory ruling that Michelle’s failure to identify William was a material misrepresentation, rendering the policy voidable. In response, Katriee— along with her mother Nancy Jones, who owned the car Katriee was driving — filed an answer and counterclaim asserting that William was at fault in the accident and that he was covered by the Safeway policy. The parties filed competing motions for summary judgment, and the circuit judge — finding Michelle’s failure to disclose William was a material misrepresentation — granted summary judgment to Safeway.
ANALYSIS
¶ 4. The appellants contend that, under this Court’s recent decision in Lyons v. Direct General Insurance Company of Mississippi, the circuit judge was precluded from declaring this policy void because an injured third party cannot be denied recovery up to the statutorily imposed minimum-policy limits.[2] But Lyons is in-apposite because it addressed an entirely distinct legal issue.
I. Lyons v. Direct General does not control this case.
¶ 5. In Lyons, Roderick Holliday caused an accident while driving a car insured by his mother.[3] When Machón *242 Lyons, who was injured in the accident, asserted a claim against that policy, Direct General Insurance Company argued that its policy contained a named-driver exclusion for Roderick.[4] Said differently, Direct did not dispute that it had issued a valid insurance policy which covered the car at the time of the accident. Rather, Direct claimed that the admittedly valid policy excluded Roderick from coverage.
¶ 6. On appeal, we concluded that the named-driver exclusion violated Mississippi’s statutorily imposed minimum-liability insurance law.[5] Our reasoning was twofold. First, we recognized that Section 63-15-4(2)(a) required an insurance company that issues a motor-vehicle-liability policy also to issue an insurance card which serves as proof that the policy provided the statutory minimum-liability limits.[6] Second, we recognized per the statutory language that “[t]his mandatory liability insurance requirement pertains to vehicles, not owners or operators.”[7] Direct had issued an insurance card, representing that the policy provided the minimum limits required by law, so the named-driver exclusion was unenforceable.[8]
¶ 7. Our analysis in Lyons, which assumed a valid insurance policy had been issued, prohibited the insurance company from excluding statutorily required coverage, but it created no duty to issue a policy. It did no more than address an invalid exclusion within a valid insurance policy.
¶ 8. By contrast, the question in this case is not whether the terms of Michelle’s policy with Safeway covered the accident, but whether the policy itself was voidable. And the longstanding, well-established law of this State renders voidable a policy issued as a result of material misrepresentations.
II. The circuit judge correctly voided Busby’s policy.
¶ 9. In 1876, in Cooperative Life Association of Mississippi v. Leflore, this Court stated:
Nothing is better settled, both in regard to insurance contracts and contracts of all sorts, than that an untrue statement by either party, as to a matter vital to the agreement, will avoid it, though there be no intentional fraud in the misrepresentation.[9]
There, the beneficiaries to a life-insurance policy brought an action in the Montgomery County Circuit Court to recover the proceeds of that policy after the insured’s death.[10] The insurer defended by asserting that the insured had made material misrepresentations in the application for insurance.[11] The circuit judge instructed the jury that the company could void the policy only by a showing of actual fraud, *243 and the jury found for the beneficiaries.[12] The company appealed and this Court set out a thorough explanation of the law regarding the effect of misrepresentations during the insurance-application process.
¶ 10. This Court first considered whether insurance contracts should be considered under their own set of legal rules, or whether they should sit on equal footing with other contracts, controlled by the general law of contracts.[13] This Court stated:
An immense amount of labor and learning is displayed in the books in the consideration of what are, and what are not, material matters in contracts of insurance, a false statement in relation to which will avoid the policy; and it is impossible to resist the conclusion, in perusing the cases, that the courts, in order to avoid supposed hardships in this class of suits, have been disposed to adopt other rules than those applicable to ordinary contracts. For this difference we can recognize no sound principle. Contracts of insurance ar'e neither mala prohibita nor mala in se, and, where entered into by persons sui juris, are to be regulated and determined by the same rules that govern ordinary agreements, with neither more nor less favor than is shown in other cases.[14]
The Court also posited that:
No man can read the history of the struggle between the courts and the insurance companies on the question of what false statements, made by the applicant, will avoid the policy, as that history is developed in the adjudged cases, without perceiving a manifest disposition to apply to such agreements a rule far more rigid than that which governs ordinary contracts. However commendable the disposition to protect unsuspecting, and frequently ignorant, men from the evil consequences of agreements into which they have been entrapped by cunningly and obscurely worded conditions, so written or printed as to escape observation, there can be no justification for disregarding, in their behalf, fundamental principles of law, or relieving them from engagements as to which there is no pretence for charging fraud. If the insurance companies, conforming their policies to the requirements of each successive decision, have protected themselves against all possible loss by any misrepresentation, no matter how insignificant or unintentional, it would be most unseemly in the courts to seek, by new exactions, to nullify these advantages. It is neither the duty nor the right of courts to protect adults against the consequences of their agreements incautiously entered into. Their functions are exhausted when they construe and enforce them as written.[15]
¶ 11. In other words, jurists had been reluctant to invalidate insurance policies based on the misrepresentations of the insured when the invalidation would deny innocent beneficiaries the right to recover, giving rise to the idea that insurance policies should not be treated equally with other contracts. But, in this Court’s opinion, the desire to avoid the unpalatable result was not a “sound principle” upon which the Court could recognize a distinct law of insurance contracts. Instead, insurance contracts were “to be regulated and determined by the same rules that govern ordinary agreements, with neither more *244 nor less favor than is showp in other cases.”[16]
¶ 12. Then, having determined that insurance contracts should be treated like all other contracts, the Court explained when a contract becomes invalid based on misrepresentations in the application process. The Court rejected the circuit court’s instruction that actual fraud need be shown, and instead explained that the relevant law was that of warranties and material misrepresentations.[17] The Court held that “[njothing is better settled, both in regard to insurance contracts and contracts of all sorts, than that an untrue statement by either party, as to a matter vital to the agreement, will avoid it, though there be no intentional fraud in the misrepresentation.” [18]
’ ¶ 13. That is, when “the misstatements of which the applicant was guilty were manifestly as to matters material to the contract, ... according to all the authorities, [they] avoided the policy.”[19] The Court also distinguished misrepresentations from warranties, stating that “[i]f parties have deliberately agreed that the validity of them contract shall depend upon the truth or falsehood of certain statements, neither court nor jury can say that the matters about which the false statement is made are too trivial to work a forfeiture of its advantages.”[20]
¶ 14. Then, in the 1908 case Fidelity Mutual Life Insurance Company v. Miaz-za, this Court expanded on these principles, stating that “[i]t is the universal rule that any contract induced by misrepresentation or concealment of material facts may be avoided by the party injuriously affected thereby.”[21] The Court explained that under this “principle of general application,” when “the misstatement is material, it can make no difference as to whether or not it was made in good faith.”[22]
¶ 15. There, an insured obtained life insurance by failing to disclose previous illnesses when requested to do so in the application.[23] This Court found that the insurance company could avoid paying the life-insurance’ proceeds to the insured’s beneficiaries because “[i]n this case it can hardly be doubted that, if there had been a full disclosure on the part of Miazza as to the character of his illness in 1903, it might reasonably have influenced the company not to make the contract of insurance.”[24]
¶ 16. This law, though old, has persisted. Eighty years later, an insured submitted a claim for damages his truck incurred in an accident, and the insurer denied coverage based on the insured’s failure to disclose two speeding tickets when asked to do so in the application process.[25] The Court reiterated the distinction between warranties and representations, and that any warranty that is not literally true will invalidate the policy, while a misrepresentation will invalidate the policy only if it is not substantially true and material.[26]
*245 ¶ 17. Because the policy and application were in conflict as to whether the answers were warranties or representations, they were considered representations, as the characterization in the policy had to prevail and because ambiguities must be construed against the insurer.[27] Analyzing the materiality requirement for a misrepresentation to invalidate an insurance policy, the Court explained that “[t]he materiality of a representation is determined by the probable and reasonable effect which truthful answers would have had on the insurer.”[28]
¶ 18. Applying this century-old precedent on insurance contracts to the facts before us today, there can be no doubt that the circuit judge properly voided the policy issued by Safeway. The application required Michelle to warrant that she had provided the names of all residents of her homé over the age of fourteen. She admittedly failed to do so by failing to disclose fifteen-year-old William, to whom she even gifted a car covered by the policy. Because the parties to the contract characterized this assertion as a warranty, its materiality heed- not be questioned, and the circuit judge properly voided the contract because the statement was not literally true.
¶ 19. And we would reach the same result even if we characterized Michelle’s failure to disclose William as a misrepresentation, because it was both material and not substantially true. The representation was entirely false because the application required Michelle to disclose all household residents over age fourteen and she did not provide all of the names she was required to provide. The representation was material because, without, a 209 percent increase in Michelle’s rate, Safeway would not have issued the policy. So, under either standard, the circuit judge reached the right result.
CONCLUSION
¶20. Because Michelle obtained her Safeway policy through what was at best a material misrepresentation, we affirm the circuit judge’s decision to void the policy.
¶ 21. AFFIRMED.
WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.

.Coop. Life Ass’n of Miss. v. Leflore, 53 Miss. 1, 12(1876).

. Lyons v. Direct Gen. Ins. Co. of Miss., 138 So.3d 887 (Miss.2014).

.Id. at 888.

. id.

. Id. at 890-91.

. Id. at 890 (quoting Miss.Code Ann. § 63-15-4(2)(a) (Rev.2013))

. Lyons, 138 So.3d at 890.

. Id. We note that, after our decision in Lyons exposed what many considered to be a glitch in the law, the Legislature promptly fixed it by amending Section 63-15-3(j)-effective July 1, 2015-to provide that "[ljiability insurance required under this paragraph (j) may contain exclusions and limitations on coverage as long as the exclusions and limitations language or form has been filed with and approved by the Commissioner of Insurance.”

. Coop. Life Ass'n of Miss., 53 Miss. at 12.

. Id.

. Id.

. Id.

. Id. at 14-15.

. Id.

. Id. at 18-19.

. Id. at 15.

. Id. at 18.

. Id. at 12.

. Id. at 18.

. Id. at 15.

. Fid. Mut. Life Ins. Co. v. Miazza, 93 Miss. 18, 46 So. 817, 819 (1908).

. Id.

. Id. at 817-18.

. Id. at 819.

. Sanford v. Federated Guar. Ins. Co., 522 So.2d 214, 215-16 (Miss.1988).

. Id. at 216 (quoting Colonial Life & Accident Ins. Co. v. Cook, 374 So.2d 1288, 1291 (Miss.1979)).

. Sanford, 522 So.2d at 217 (citing Nat'l Life and Accident Co. v. Miller, 484 So.2d 329, 337 (Miss.1985), overruled on other grounds by Miss. Bar v. Attorney ST, 621 So.2d 229, 232 (Miss.1993)).

. Sanford, 522 So.2d at 217.