# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-FC-01160-SCT

*AMERICAN COMPENSATION INSURANCE COMPANY*

*v.*

*HECTOR RUIZ, DOING BUSINESS AS LOS PRIMOZ CONSTRUCTION; RAUL APARACIO; JESCO, INCORPORATED; AND APPALACHIAN UNDERWRITERS, INCORPORATED*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2023 |
| TRIAL COURT ATTORNEYS: | CHRISTOPHER HAILEY CORKERN |
| | LAWRENCE MATTHEW QUINLIVAN |
| | MICHAEL WAYNE BAXTER |
| | MICHAEL MADISON TAYLOR, JR. |
| | GEORGE E. DENT |
| | EDWARD P. CONNELL, JR |
| | ROBERT P. THOMPSON |
| | PAUL PACIFIC BLAKE |
| ATTORNEYS FOR APPELLANT: | ROBERT P. THOMPSON |
| | PAUL PACIFIC BLAKE |
| ATTORNEYS FOR APPELLEES: | GEORGE E. DENT |
| | MICHAEL WAYNE BAXTER |
| | SEAN PATRICK MOUNT |
| | MICHAEL MADISON TAYLOR, JR. |
| | PHILLIP MARTIN LEMERE |
| NATURE OF THE CASE: | CIVIL - FEDERALLY CERTIFIED QUESTION |
| DISPOSITION: | CERTIFIED QUESTION ANSWERED - 06/27/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. The United States Court of Appeals for the Fifth Circuit has certified the following question to this Court:

> Does the Mississippi Workers' Compensation Act (MWCA) allow an insurer to void *ab initio* a workers' compensation policy based on a material misrepresentation?

The MWCA is silent. The statutory contractor (who will be on the hook if the subcontractor's insurer is permitted to void the policy) argues that, because the MWCA does not provide for rescission—only cancellation and nonrenewal—then rescission is not an available remedy. The insurer (who will be on the hook for millions of dollars if not permitted to void the policy) argues that, because the legislature opted not to address rescission in the MWCA, the *common law* remedy of voiding the policy ab initio is available.

¶2. The insurer filed for a declaratory judgment in federal court. The federal district judge made an ***Erie*** guess[1] that Mississippi's workers' compensation law does *not* permit an insurer to rescind a workers' compensation policy. So it dismissed the insurer's lawsuit to have the policy declared void. The insurer appealed to the Fifth Circuit. Instead of making its own ***Erie*** guess, the Fifth Circuit certified the determinative question to this Court.

¶3. As the Fifth Circuit rightly observed, there is no Mississippi statute or case addressing this exact issue. There is, as the insurer points out, case law permitting *other types* of

---

[1] Taking its name from ***Erie Railroad v. Tompkins***, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), an ***Erie*** guess occurs when, in the absence of a state statute or caselaw on point, a "federal court must divine and enforce the rule that it believes this [C]ourt would choose if the case were pending here." ***Peoples Bank & Tr. Co. v. L & T Devs., Inc.***, 434 So. 2d 699, 712 n.9 (Miss. 1983) (citing ***Mason v. Am. Emery Wheel Works***, 241 F.2d 906 (1st Cir. 1957); ***Green v. Amerada-Hess Corp.***, 612 F.2d 212, 214 (5th Cir. 1980); Wright, *Law of Federal Courts* 375 (4th ed. 1983)), *judgment corrected*, 437 So. 2d 7 (Miss. 1983).

insurance policies to be voided ab initio if a material misrepresentation is made by the insured when applying for the policy. But a workers' compensation policy is different. Not only is it governed *exclusively* by statute, but also it exists to pay benefits to the injured worker.[2] And in this case, the injured worker did not make any material misrepresentation—his employer allegedly did.

¶4. Because the MWCA makes no provision for an insurer to void a workers' compensation policy based on a material misrepresentation and because the MWCA exists to ensure injured workers are compensated, we conclude that the MWCA does *not* allow insurers to void ab initio a workers' compensation policy based on an employer's material misrepresentation.

**Background Facts & Procedural History**

¶5. Our answer to the certified question is not driven by the underlying facts. The Fifth Circuit has not tasked this Court with determining *if* the employer made a material misrepresentation in obtaining a workers' compensation policy. Neither has the federal district or appellate court reached any conclusions about the insurer's allegations of a material misrepresentation. Instead, the district court dismissed the insurer's complaint because it concluded, as a matter of Mississippi law, a workers' compensation policy could not be rescinded based on a material misrepresentation. Still, the facts—and certainly the procedural history—do provide necessary context for how the certified question landed in this Court and help frame the parties' competing arguments.

---

[2] Miss. Code Ann. § 71-3-1(3) (Rev. 2021).

## I.     The Declaratory Action

¶6.     The employer is Hector Ruiz, doing business as Los Primoz Construction. Ruiz was performing work as a subcontractor for contractor Jesco, Incorporated, when his employee Raul Aparacio fell more than fifteen feet and severely injured himself.

¶7.     Ruiz had a workers' compensation insurance policy with the American Compensation Insurance Company (ACIC). ACIC immediately began paying benefits to Aparacio. But when ACIC's payouts surpassed the quarter-million-dollar mark, ACIC initiated a declaratory action in federal court seeking to retroactively void the policy. ACIC alleged that Ruiz materially misrepresented in his application that his company did not perform work more than fifteen feet above ground. ACIC asserted that, had Ruiz been truthful, ACIC would not have issued the policy.

¶8.     Again, while this Court is not tasked with weighing the merits of ACIC's claim, we do observe that the facts appear to be more nuanced than ACIC has alleged in its complaint. Apparently, Ruiz's former policy *did* take into account and charge additionally for the fact his employees worked at heights above fifteen feet. So when ACIC received the application for the policy year at issue, ACIC questioned why the application answered negatively about working above ground. Ruiz's insurance agent assured ACIC the application was correct.[3] So ACIC issued the policy and only charged for not working more than fifteen feet above ground. But ACIC included the work-above-ground code in the description of what the policy covered. After Aparacio fell, ACIC initially retroactively increased its premium to

---

[3] Ruiz contends his agent was the one to make the misrepresentation, asserting that the agent filed the application without his authorization.

4

cover work more than fifteen feet above ground. But then ACIC later filed the declaratory action against Ruiz and Jesco—Aparacio's statutory employer should the subcontractor's workers' compensation policy be declared void.

¶9. Jesco moved for summary judgment. Jesco asserted that ACIC was not entitled to void the policy because Mississippi's workers' compensation statutes do not provide for rescission as a remedy for an employer's material misrepresentation. Jesco argued that the MWCA replaced all common law rights and remedies. And while Mississippi Code Section 71-3-77(1) (Rev. 2021) allows for cancellation and nonrenewal if certain conditions are met, the MWCA makes no provision for rescission. ACIC countered that, because Section 71-3-77(1) is silent about rescission, it has the common law right to void the policy.

## II.     The Federal District Court's Decision

¶10. The federal district judge sided with Jesco. *Am. Comp. Ins. Co. v. Ruiz*, No. 1:18-CV-213-DMB-DAS, 2022 WL 4468619 (N.D. Miss. Sept. 26, 2022). The judge looked to the MWCA, emphasizing that it exclusively governs workers' compensation insurance policies, is in *derogation* of the common law, and exists to provide benefits to injured employees. *Id.* at *5-6. Looking specifically at Section 71-3-77(1), the judge noted this Court has held the statute's purpose is to ensure employees are protected. *Id.* at *6 n.27 (quoting *Cooper v. Marathon Freight Lines, Inc.*, 635 So. 2d 855, 858 (Miss. 1994)). So to allow post-injury rescission of a policy would go against this purpose. *Id.* at *6-7.

¶11. The judge also cited the leading treatise on workers' compensation law. *Id.* at *6 (citing 14 Lex K. Larson, *Larson's Workers' Compensation Law* § 150.02 (Matthew Bender,

5

rev. ed. 2022)). According to *Larson's*, a workers' compensation insurer has a dual relationship with the insured *and* the employee. *Id.* (citing 14 *Larson's* § 150.02). While certain remedies might be available against the insured (such as rescission for material misrepresentation), these same defenses are *not* available against the injured employee. *Id. Larson's* goes so far as to say the employer's misconduct is "of no relevance" between the insurer and the employee. *Id.* (quoting 14 *Larson's* § 150.02).

¶12. Finally, the judge was persuaded by an analogous case from New Jersey that relied on that state's cancellation statute to rule that, because the purpose of the statute was to ensure workers were not left without coverage, the legislature did not intend for the remedy of rescission. *Id.* at * 7 (citing **Am. Millennium Ins. Co. v. Berganza**, 902 A.2d 266, 269 (N.J. Super. Ct. App. Div. 2006)). Similarly, New York has found rescission of a workers' compensation insurance policy not only "incompatible" with the notice-of-cancellation provision in its workers' compensation statute but also irreconcilable with the public policy underlying the entire workers' compensation statutory scheme. *Id.* (quoting **In re Claim of Cruz v. New Millennium Constr. & Restoration Corp.**, 793 N.Y.S.2d 548, 550 (N.Y. App. Div. 2005)).

¶13. Considering all of this, the federal judge made an **Erie** guess that, as a matter of Mississippi law, ACIC was not entitled to the remedy it sought—voiding the contract ab initio. *Id.* at *7. So the federal district judge granted Jesco's motion for summary judgment and dismissed ACIC's claims. *Id.*

      **III.   The Certified Question**

¶14. ACIC appealed. And the Fifth Circuit found no definitive answer in Mississippi law. ***Am. Comp. Ins. Co. v. Ruiz***, No. 22-60579, 2023 WL 6644505 (5th Cir. Oct. 12, 2023). Rather than make its own ***Erie*** guess, the Fifth Circuit certified the following question to this Court:

> Does the Mississippi Workers' Compensation Act (MWCA) allow an insurer to void *ab initio* a workers' compensation policy based on a material misrepresentation?

***Id.*** at *4.

## Discussion

### I. The Mississippi Workers' Compensation Act (MWCA) controls.

¶15. The Mississippi Workers' Compensation Act (MWCA) "represents a wide departure from common law[.]" ***Brown v. Estess***, 374 So. 2d 241, 242 (Miss. 1979) (quoting ***McCluskey v. Thompson***, 363 So. 2d 256, 259 (Miss. 1978), *abrogated on other grounds by* ***Choctaw Inc. v. Wichner***, 521 So. 2d 878, 880-82 (Miss. 1988)). The MWCA is a statutory scheme aimed at providing compensation to employees accidentally injured during the course and scope of their employment, regardless of fault. ***Id.*** This right to recovery comes at the exchange or abrogation of the common law right to recovery from a potentially negligent employer. ***Id.*** Consequently, not only is the MWCA the exclusive statutory remedy for compensation for work-related injuries, Mississippi Code Section 71-3-9(1) (Rev. 2021), but also the MWCA governs all contracts for workers' compensation insurance. Miss. Code Ann. § 71-3-77(1).

7

¶16. Under Section 71-3-77(1), "[e]very contract for the insurance of [workers'] compensation . . . , or against liability therefor, shall be deemed to be made subject to the provisions of [the MWCA], and provisions thereof inconsistent with [the MWCA] shall be void." Section 71-3-77(1) has no provision for rescission. This section does permit cancellation and nonrenewal of workers' compensation insurance contracts—but only if the insured and the Commission are given advanced written notice. *Id.*

## II. Rescission is inconsistent with Section 71-3-77(1).

¶17. ACIC argues at great length that rescission is not the same as cancellation or nonrenewal of a policy. It suggests that Section 71-3-77(1) only explicitly references cancellation, not rescission. So it reasons that the common law remedy of voiding a policy ab initio can be applied to a workers' compensation contract without running afoul of Section 71-3-77(1).

¶18. The dissent takes the same view. Because Section 71-3-77(1) does not expressly preclude rescission, it reasons that an insurer can void a workers' compensation policy just as it could any other insurance contract, such as a life insurance or auto insurance policy.[4] But Section 71-3-77(1) makes clear that workers' compensation insurance policies differ from other insurance policies in an important way—namely, workers' compensation insurance policies are governed by the MWCA and cannot provide for any remedy inconsistent with the MWCA.

---

[4] *E.g.*, **Safeway Ins. Co. v. Dukes**, 185 So. 3d 977, 981 (Miss. 2015) (holding that a false warranty made to an automobile liability insurer voided the policy); **Prudential Ins. Co. of Am. v. Est. of Russell**, 274 So. 2d 113, 116 (Miss. 1973) (holding that an insured's false declaration on a life insurance policy application rendered the policy void).

8

¶19.    Thus, while we agree that rescission is not the same as cancellation, we disagree that allowing rescission is consistent with Section 71-3-77(1).  "Rescission is a retroactive remedy and renders a contract unenforceable from the outset."  *Cenac v. Murry*, 609 So. 2d 1257, 1273 (Miss. 1992).  "Cancellation, however, is prospective and acts to discharge or excuse remaining obligations under an agreement."[5] *Id.* In the workers' compensation context, however, we find that allowing rescission is tantamount to allowing an insurer to *retroactively* cancel a policy.  More than that, here, ACIC is seeking retroactive cancellation after a worker has been injured and already received significant benefits.  As we have held, "[t]he purpose of [Section 71-3-77(1)] is to provide 'assurance to the commission that eligible employees are protected under the act.'"  *Cooper*, 635 So. 2d at 858 (quoting *Arender v. Nat'l Sales, Inc.*, 193 So. 2d 579, 583 (Miss. 1966); *T. H. Mastin & Co. v. Russell*, 214 Miss. 700, 59 So. 2d 321, 323 (1952)).  With this purpose in mind, we conclude that permitting a workers' compensation insurer to rescind—or retroactively void—a workers' compensation policy is inconsistent with Section 71-3-77(1) and thus prohibited under the MWCA.

---

[5] In other words, in the insurance context, rescission would take the parties back to where they were before the policy was issued—the insured gets any premiums refunded, and it is as if coverage never existed.  But cancellation would simply terminates coverage going forward before the end of the policy period—the insurer keeps any premiums paid, and coverage existed until the policy was cancelled.

¶20.    Other states with similar statutes that have reached the same conclusion.[6]  For example, in ***Cruz***, the New York appellate court "conclude[d] that the doctrine of void ab initio, or retroactive cancellation," codified in New York's general insurance statute, was "incompatible with" the more specific workers' compensation statute governing policy cancellation.  ***Cruz***, 793 N.Y.S.2d at 550.  Like Mississippi's statute, New York's workers' compensation statute was silent about voiding the policy ab initio.  But the appellate court found the cancellation provision to be "comprehensive and all-embracing," governing even voiding the policy for fraud.  ***Id.*** at 551.  Further, the court "f[ou]nd it difficult to reconcile the existence of a right to rescind a workers' compensation policy ab initio with the public policy considerations underlying the compulsory workers' compensation statutory scheme . . . , namely, to surely and swiftly compensate an injured employee[.]"  ***Id.***; *see also* ***Berganza***, 902 A.2d at 269 (applying New Jersey's workers' compensation insurance

---

[6] We are mindful of the cases that ACIC cites in which other courts have held that their states' respective workers' compensation insurance cancellation statutes did not preclude rescission.  *E.g.*, ***Am. Home Assur. Co. v. Church of Bible Understanding***, No. Civ. A. 03-6062, 2006 WL 2583594, at *3-4 (E.D. Pa. Sept. 6, 2006); ***S. Ins. Co. v. Workers' Comp. Appeals Bd.***, 217 Cal. Rptr. 3d 898, 904 (Cal. Ct. App. 2017); ***State Comp. Fund v. Mar Pac Helicopter Corp.***, 752 P.2d 1, 8 (Ariz. Ct. App. 1988).  But we find those cases either to be unpersuasive or to involve key differences in their states' statutory schemes.  For example, in both ***Southern Insurance*** and ***Mar Pac Helicopter***, the insurers were relying on the *statutory* right to rescission found in California's and Arizona's general insurance law respectively.  ***S. Ins.***, 217 Cal. Rptr. 3d at 904; ***Mar Pac Helicopter***, 752 P.2d at 7. So those rulings came down to a matter of construing two statutes together—something we are not tasked with doing here.  Moreover, in ***Mar Pac Helicopter***, the Arizona court ruled that rescission did not go against the purpose of that state's workers' compensation law, which is to protect employees, because Arizona had a special fund to protect the employee of an uninsured employer.  752 P.2d at 8.

10

cancellation statute—and its notice requirements—when an insurer sought to void the policy based on the employer's fraud).

¶21. Similarly, we find that, in Mississippi, voiding the policy ab initio is inconsistent with the "purpose" of Section 71-3-77(1)—which "is to provide 'assurance to the commission that eligible employees are protected under the act.'" *Cooper*, 635 So. 2d at 858 (quoting *Arender*, 193 So. 2d at 583; *Russell*, 59 So. 2d at 323).

### III. Allowing rescission would go against the purpose of the MWCA.

¶22. Rescission also goes against the very purpose of the MWCA. As the legislature has expressly declared:

> The primary purposes of the Workers' Compensation Law are to pay timely temporary and permanent disability benefits to every worker who legitimately suffers a work-related injury or occupational disease arising out of and in the course of his employment, to pay reasonable and necessary medical expenses resulting from the work-related injury or occupational disease, and to encourage the return to work of the worker.

Miss. Code Ann. § 71-3-1(3) (Rev. 2021).

¶23. Here, there is no question that Aparacio legitimately suffered a work-related injury arising out of and in the course of his employment. So based on Section 71-3-1(3), we conclude that the legislature, by not expressly providing for the remedy of rescission based on an employer's material misrepresentation, did not intend to permit insurers to void a policy ab initio and thus cut off an injured employee's legitimate right to benefits.

¶24. As the Fifth Circuit has rightly observed, under the MWCA, "[t]he duty of the carrier to pay benefits is owed by the carrier to the injured employee"—not simply the employer. *Rogers v. Hartford Acc. & Indem. Co.*, 133 F.3d 309, 313 (5th Cir. 1998) (citing Miss. Code

11

Ann. §§ 71-3-37(1) & -77(1)).   So any recourse that attempts to block benefits to a legitimately injured employee is not permitted under the statute.

¶25.    We acknowledge that in *AmFed National Insurance Co. v. NTC Transportation, Inc.*, 196 So. 3d 947 (Miss. 2016), this Court held that Section 71-3-77(1) did not apply when an insurance carrier terminated coverage at the end of the policy period because the employer failed to timely remit the premium for the next policy period.   In that case, we held that, "based on the statute's plain language, the[ statutory] notice requirements do not apply unless [the insurer] chose to *cancel* [the employer's] workers' compensation coverage *within the policy period* or *did not intend to renew* [the employer's] policy upon its expiration."   *Id.* at 958.   ACIC latches onto this language, asserting Section 71-3-77(1) solely governs attempts to cancel or not renew a policy—meaning the statute does not restrict or prohibit rescission.

¶26.    We disagree and point out the circumstances in *AmFed* were different.   First, the insurer's action did not even arguably amount to retroactive cancellation of a policy.   But that is exactly what is asked for here.   *AmFed*, 196 So. 3d at 958.   And second, unlike this case, in *AmFed* the coverage action was solely between the employer and insurer—because both had already settled with the injured employee.   *Id.* at 950.   So the issue was what remedy the insurer had against the delinquent employer.

¶27.    Here, by finding the MWCA precludes a common law rescission action, we are by no means saying that an insurer like ACIC has no remedy against an employer who allegedly makes a material misrepresentation.   Rather, insurers like ACIC may have other remedies against employers who misrepresented the scope of the work its employees perform and its

12

attendant risks when procuring workers' compensation insurance. But the availability of alternate remedies is not the question before us. The sole question is whether the MWCA permits the remedy of voiding a policy ab initio based on an employer's material misrepresentation. And to this question, we answer no, it does not.

¶28. **CERTIFIED QUESTION ANSWERED.**

**KITCHENS AND KING, P.JJ., BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION. RANDOLPH, C.J., NOT PARTICIPATING.**

**COLEMAN, JUSTICE, DISSENTING:**

¶29. Mississippi has recognized and followed a robust common-law of contracts since well before the State adopted its Workers Compensation Law in 1948. The Supreme Court of Mississippi has repeatedly held that the common law remains in effect until abrogated by statute and that in order for a statute to abrogate the common law, the statute must clearly show the Legislature's intent to do so. Because the statutes cited by the parties and the majority in today's case fall short of the requisite clarity, I would hold that the common law that renders contracts void *ab initio* in the face of a material misrepresentation remains in effect.

## ANALYSIS

### I. Standard of Review

¶30. Because the instant case involves questions of statutory interpretation, the standard of review is *de novo*. *Hillhouse v. Chris Cook Constr., LLC*, 325 So. 3d 646, 649 (¶ 5) (Miss. 2021) (quoting *Dancy v. State*, 287 So. 3d 931, 935–36 (Miss. 2020)).

13

## II.   Common Law of Contracts and Material Misrepresentations

¶31.   Mississippi has long recognized that insurance polices issued in reliance on material misrepresentations are void *ab initio*.  In ***Jones-Smith v. Safeway Insurance Co.***, 174 So. 3d 240 (Miss. 2015), we noted that as far back as 1876 Mississippi law recognized the rule. *Id.* at 242 (¶ 9) (citing ***Coop. Life Ass'n v. Leflore***, 53 Miss. 1, 12 (1876)).  "Nothing is better settled, both in regard to insurance contracts and contracts of all sorts, than that an untrue statement by either party, as to a matter vital to the agreement, will avoid it, though there be no intentional fraud in the misrepresentation." *Id.* at 242 (¶ 9) (quoting ***Leflore***, 53 Miss. at 12).

¶32.   As noted by the ***Jones-Smith*** Court, in ***Leflore***, the Court rejected the suggestion that the common law treated insurance contracts differently from other contracts for the purpose of handling material misrepresentations:

> An immense amount of labor and learning is displayed in the books in the consideration of what are, and what are not, material matters in contracts of insurance, a false statement in relation to which will avoid the policy; and it is impossible to resist the conclusion, in perusing the cases, that the courts, in order to avoid supposed hardships in this class of suits, have been disposed to adopt other rules than those applicable to ordinary contracts. *For this difference we can recognize no sound principle.* Contracts of insurance are neither *mala prohibita* nor *mala in se*, and, where entered into by persons *sui juris*, are to be regulated and determined by the same rules that govern ordinary agreements, with neither more nor less favor than is shown in other cases.

***Jones-Smith***, 174 So. 3d at 243 (¶ 10) (emphasis added) (citing ***Leflore***, 53 Miss. at 14-15).

The ***Jones-Smith*** Court went on to quote from ***Leflore*** as follows:

> No man can read the history of the struggle between the courts and the insurance companies on the question of what false statements, made by the

14

applicant, will avoid the policy, as that history is developed in the adjudged cases, without perceiving a manifest disposition to apply to such agreements a rule far more rigid than that which governs ordinary contracts. However commendable the disposition to protect unsuspecting, and frequently ignorant, men from the evil consequences of agreements into which they have been entrapped by cunningly and obscurely worded conditions, so written or printed as to escape observation, there can be no justification for disregarding, in their behalf, fundamental principles of law, or relieving them from engagements as to which there is no pretence for charging fraud. If the insurance companies, conforming their policies to the requirements of each successive decision, have protected themselves against all possible loss by any misrepresentation, no matter how insignificant or unintentional, it would be most unseemly in the courts to seek, by new exactions, to nullify these advantages. It is neither the duty nor the right of courts to protect adults against the consequences of their agreements incautiously entered into. Their functions are exhausted when they construe and enforce them as written.

*Jones-Smith*, 174 So. 3d at 243 (¶ 10) (citing *Leflore*, 53 Miss. at 18-19). Pursuant to the above-quoted sections of *Leflore*, the Court in *Jones-Smith* concluded that even in the face of reticence from judges who did not wish to penalize innocent beneficiaries for the misrepresentations of others, Mississippi common law treated insurance contracts no differently. *Jones-Smith*, 174 So. 3d at 243-44 (¶ 11).

¶33.    "Nothing is better settled, both in regard to insurance contracts and contracts of all sorts, than that an untrue statement by either party, as to a matter vital to the agreement, will avoid it, though there be no intentional fraud in the misrepresentation." *Leflore*, 53 Miss. at 12 (citing *Bliss on Insurance* § 52; *May on Insurance* §§ 181, 182).

That is, when "the misstatements of which the applicant was guilty were manifestly as to matters material to the contract, . . . according to all the authorities, [they] avoided the policy." The Court also distinguished misrepresentations from warranties, stating that "[i]f parties have deliberately agreed that the validity of their contract shall depend upon the truth or falsehood of certain statements, neither court nor jury can say that the matters

15

about which the false statement is made are too trivial to work a forfeiture of its advantages."

*Jones-Smith*, 174 So. 3d at 244 (¶ 13) (footnotes omitted) (quoting *Leflore*, 53 Miss. at 15, 18).

¶34.    The *Jones-Smith* Court went on to discuss *Fidelity Life Insurance Co. v. Miazza*, 93 Miss. 18, 46 So. 817 (1908).  In *Miazza*, an insured misrepresented his medical history when obtaining life insurance.  46 So. at 818.  The *Miazza* Court held that the insurance company need not pay the insurance proceeds:

> It is the universal rule that any contract induced by misrepresentation or concealment of material facts may be avoided by the party injuriously affected thereby. If the applicant for insurance undertakes to make a positive statement of a fact, if it be material to the risk, such fact must be true. It is not sufficient that he believes it true, but it must be so in fact, or the policy will be avoided, provided, always, that the misstatement be about a material matter. If the applicant is not informed as to any question asked in the application, he should so state, and there can then be no misrepresentation.

*Id.* at 819.

¶35.    As the *Jones-Smith* Court wrote, the common law principle that material misrepresentations render contracts, including insurance contracts, void *ab initio*, has persisted through the decades and remains the law.  *Jones-Smith*, 174 So. 3d at 244 (¶ 16).

### III.    The Abrogation of the Common Law by Statute

¶36.    Another well-worn and well-preserved principle of Mississippi law is that "[t]he common law forms the basis of our system of jurisprudence, and remains in force until repealed, changed, or modified by statute."  *Hemingway v. Scales*, 42 Miss. 1, 16 (1868).  In order for a statute to abrogate the common law, it must be specific in doing so.  *Burns v.*

16

*Allen*, 202 Miss. 240, 31 So. 2d 125, 126 (1947). "In general, 'a new statute will not be considered as reversing long-established principles of law and equity unless the legislative intention to do so clearly appears.'" *Lawson v. Honeywell Int'l., Inc.*, 75 So. 3d 1024, 1029 (¶ 15) (Miss. 2011) (quoting *Thorp Com. Corp. v. Miss. Road Supply Co.*, 348 So. 2d 1016, 1018 (Miss. 1977)).

¶37.    In *Lawson*, the Court employed the maxim that statutory abrogations of the common law must be clear and specific to hold that the Mississippi Products Liability Act did not subsume common law negligence actions against nonmanufacturing and nonselling product designers.  75 So. 3d at 1029 (¶ 16).  The *Lawson* Court reasoned that, as the Products Liability Act addressed only what a plaintiff must prove to prevail against manufacturers and sellers of a product, the pertinent statutes lacked the requisite specificity to include nonselling and nonmanufacturing designers.  *Id.*  The Court wrote:

> This Court "cannot . . . add to the plain meaning of the statute or presume that the legislature failed to state something other than what was plainly stated." *His Way Homes, Inc. v. Miss. Gaming Comm'n*, 733 So. 2d 764, 769 (Miss. 1999).  The Legislature did not state that the MPLA applies to, or precludes, claims against designers of a product.  Holding that the MPLA is applicable to such claims would constitute an improper addition to the statute, since designers plainly are omitted.

*Id.* at 1030 (¶ 17).

¶38.    In *Day v. Hamilton*, 237 Miss. 472, 115 So. 2d 300 (1959), *superseded by statute as stated in McCain v. Memphis Hardwood Flooring Co.*, 725 So. 2d 788, 790-791 (¶ 9) (Miss. 1998) *overruled on other grounds by Stockstill v. Gammill*, 943 So. 2d 35 (Miss. 2006),  the Court addressed whether statutory damages for cutting another's trees provided an exclusive

17

remedy as against a common law action sounding in trespass. *Id.* at 303. The Court held that the statutes "do not indicate any legislative intent that the statutory penalty would be the exclusive remedy." *Id.* The Court reasoned: "Statutes are not to be understood as effecting a change in the common law beyond that which is clearly indicated." *Id.* (citing 82 C.J.S. *Statutes* § 363; **Burns v. Allen**, 202 Miss. 240, 31 So. 2d 125 (1947); **Sanders v. Neely**, 197 Miss. 66, 19 So. 2d 424 (1944)). The Court held that the common law remedy remained. *Id.*

## IV. The Nonabrogation of the Common Law Principle of Avoidance Due to Material Misrepresentation in the Context of Workers' Compensation

¶39. The United States Court of Appeals for the Fifth Circuit asks us: "Does the Mississippi Workers' Compensation Act ("MWCA") allow an insurer to void *ab initio* a workers' compensation policy based on a material misrepresentation?" The plaintiff, arguing that Mississippi's longstanding common law has not been abrogated by statute, argues that it does, and I agree.

### A. Mississippi Code Section 71-3-77(1)

¶40. In its brief, the defendant, Jesco, Inc., contends that Mississippi Code Section 71-3-77 "provides the only mechanism to terminate a workers' compensation policy." Although the statute is wide-ranging, in pertinent part it provides as follows:

> No such policy shall be subject to nonrenewal, or cancelled by the insurer within the policy period, until a notice in writing shall be given to the commission and to the insured, fixing the date on which it is proposed to cancel it or declaring that the company does not intend to renew the policy upon expiration date. Notice to the insured shall be served personally or by registered or certified mail. Notice to the commission shall be provided in such manner and on such form as the commission may prescribe or direct. No such cancellation or nonrenewal shall be effective until thirty (30) days after

18

the service of such notice on the insured and the provision of notice to the commission, unless the employer has obtained other insurance coverage, in which case such policy shall be deemed cancelled as of the effective date of such other insurance, whether or not such notice has been given.

Miss. Code Ann. § 71-3-77(1) (Rev. 2021). From the plain language of the above-quoted statute, the Legislature clearly intended to provide a mechanism for the cancellation of a valid policy on a certain date, after which the policy would be ineffective. "Cancellation as used in insurance law, means termination of a policy *prior* to the expiration of the policy period by an act of one or all the parties." *AmFed Nat'l Ins. Co. v. NTC Transp., Inc.*, 196 So. 3d 947, 958 (¶ 41) (Miss. 2016) (internal quotation marks omitted) (quoting *Luedke v. Audubon Ins. Co.*, 874 So. 2d 1029, 1034 (¶ 18) (Miss. Ct. App. 2004)). On the other hand, void *ab initio* means that the transaction "is null and void from its inception, and as a matter of law it as if the transaction never happened." *Crotwell v. T&W Homes*, 318 So. 3d 1117, 1122 (¶ 18) (Miss. 2021) (internal quotation mark omitted) (quoting *Thoden v. Hallford*, 310 So. 3d 1156, 1160 (Miss. 2021)).

¶41. In other words, the statute is wholly silent as to the venerable principle, laid out above, that a contract (including an insurance contract) is void *ab initio* should it be issued in reliance on a material misrepresentation. One does not speak of cancelling a contract that is void from the beginning, as though it never happened. After all, there is nothing to cancel.

¶42. As set out above, for a statute to abrogate the common law, the Legislature's intent to do so must be clear. Put in the terms of today's case, nothing in Section 71-3-77 clearly abrogates the common law and mandates that, notwithstanding the common law, an insurer that issues a workers' compensation policy will be bound when the policy is issued based on

19

a material misrepresentation. In *Lawson*, the Court held that Mississippi's Products Liability Act did not foreclose a common law negligence action against a nonmanufacturing, nonselling designer of a product because such an entity was not included in the statute. *Lawson*, 75 So. 3d at 1025 (¶ 1). In *Day*, the Court held that the statutorily created remedy for cutting another's trees did not eliminate the remedy supplied by a common law action sounding in trespass because the statute did not address the common law remedy. *Day*, 115 So. 2d at 478. Today, the Court should hold that because the Workers' Compensation Law does not abrogate the common law principle that a contract based on a material misrepresentation is void *ab initio*, because the Workers' Compensation Law does not clearly state that it does so.

¶43.    Jesco contends that the Workers' Compensation Law renders workers' compensation policies "fundamentally distinct" from other types of insurance policies. Jesco points to several statutory regulations on workers' compensation coverage, including a prohibition against limiting coverage and writing coverage exclusions. *See Nat'l Sur. Corp. v. Kemp*, 217 Miss. 537, 64 So. 2d 723, 730 (1953). However, what Jesco does not identify in the course of its brief is either a blanket repudiation of the common law of contracts or a specific, clear repudiation of the principle at issue here, *i.e.*, the void *ab initio* status of an insurance contract issued pursuant to a material misrepresentation.

¶44.    Jesco cites, *inter alia*, *West v. Plastifax, Inc.*, 505 So. 2d 1026 (Miss. 1987), as an example of cases in which we have held that other common law rights and remedies have yielded to the Workers' Compensation Law. However, *West* is not informative. There, the

plaintiff sought to file a civil action claiming loss of consortium stemming from injuries to her husband. *Id.* at 1026. Mississippi statutory law created the claim for loss of consortium. *Id.* (citing Miss. Code Ann. § 93-3-1 (Rev. 1972)). Accordingly, the issue in *West* was not whether the statute abrogated the common law but the effect of one statute, *i.e.*, the exclusive remedy provision of the Workers' Compensation Law, on another. Even if the question had been the abrogation of the common law, the exclusive remedy provision as quoted by the *West* Court was far more clear on the subject of a spouse's right to recover for loss of consortium than any statute cited today is on the subject of whether a contract is void *ab initio*. As quoted by the *West* Court, the exclusive remedy provision read as follows:

> The liability of an employer to pay compensation shall be exclusive *and in place of all other liability* of such employer to the employee, his legal representative, husband or *wife*, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter....

*Id.*, at 1027 (quoting Miss Code Ann. 71-3-9 (Rev. 1972)). The *West* Court correctly noted that the statute "clearly and unambiguously" barred the wife's loss of consortium claim. *Id*. Such clarity is sorely lacking when it comes to the abrogation of the common law of contracts by the Workers' Compensation Law, and Jesco's invocation of *West* serves well to emphasize its absence.

**CONCLUSION**

¶45.   As set forth above, nothing in the Workers' Compensation Law generally, and nothing in Section 71-3-77 specifically, clearly abrogates the common law of contracts principle that a contract based on a material misrepresentation is void *ab initio*. Our well-settled law

21

demands such clarity before we hold that the common law, the "basis of our system of jurisprudence," *Hemingway*, 42 Miss. at 16, has given way.  I agree with the majority in one respect.  The Mississippi Workers' Compensation Law is, indeed, silent.  Maj. Op. ¶ 1.  I disagree with the majority's holding and answer to the Fifth Circuit's question though because according to well-settled law, a clear statement of intent, not silence, is required to abrogate the common law.  Accordingly, and with respect, I dissent.